■ In the Matter of JAMAL B., a Child Alleged to be Permanently Neglected. ULSTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; STEVEN EE., Appellant. (And Four Other Related Proceedings.) In the Matter of JAMAL B., a Child Alleged to be Permanently Neglected. ULSTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MELODY B., Appellant. (And Four Other Related Proceedings.) [731 NYS2d 567] —Mugglin, J. Appeals from six orders of the Family Court of Ulster County (Work, J.), entered October 12, 2000, which, *inter alia*, granted petitioner's applications, in 10 proceedings pursuant to Social Services Law § 384-b, to adjudicate respondents' children to be permanently neglected, and terminated respondents' parental rights.

Respondents Steven EE. (hereinafter the father) and Melody B. (hereinafter the mother) are the unmarried parents of Jamal B. (born in 1993), Alonzo B. (born in 1994) and Kyle B. (born in 1989). The children came into the care of petitioner on May 24, 1997 when Jamal and Alonzo were treated at a hospital burn center for second and third degree burns suffered when they were placed (if not intentionally, at least recklessly) by their father in a bathtub containing scalding hot water. During this episode, their mother remained seated on a sofa in the living room. Although this occurred on the evening of May 23, 1997, the parents sought no medical treatment until urged to do so by the paternal grandmother the following day.

At this point, petitioner instituted child protective proceedings regarding the three children and took immediate custody of Jamal and Alonzo. Kyle was removed from the home on the consent of respondents. On February 25, 1998, Jamal and Alonzo were found to be neglected by respondents and abused by the father and Kyle was found to be derivatively neglected by respondents.

At the dispositional hearing in April 1998, respondents consented to placement of the children with petitioner for a period of one year. The mother was directed, *inter alia*, to engage in individual therapy and parenting training and the father was directed, *inter alia*, to engage in individual therapy, parenting classes and an abusive parent program. Petitioner commenced these proceedings on April 22, 1999 seeking an adjudication that the children were permanently neglected by respondents and terminating respondents' parental rights. Following fact-finding and dispositional hearings, the children were found to be permanently neglected based upon respondents' failure to plan for their future (*see,* Social Services Law § 384-b [7] [a]); respondents' parental rights were terminated and custody of the children was transferred to petitioner for adoption. Respondents appeal, and we affirm.

The threshold inquiry in this type of case is whether petitioner has proved by clear and convincing evidence that it has fulfilled its statutory duty to exercise diligent efforts to strengthen the parent-child relationship and to reunite the family (*see,* Social Services Law § 384-b [7]). If this burden is met, then the issue becomes whether the parent has failed for a period of more than one year following the date that the child came into the agency's custody to fulfill his or her duty to maintain contact with the child or plan for the future of the child, although physically and financially able to do so. Failure in either requirement supports a finding of permanent neglect (*see, Matter of Star Leslie W.,* 63 NY2d 136). One reason the agency may be excused from its obligation to exercise diligent efforts is if such efforts would be detrimental to the best interests of the child (*see,* Social Services Law § 384-b [7] [a]). These well-settled principles are not questioned by respondents. Their appeals focus upon arguments that Family Court erred in the application of these principles to the facts herein.

We first address the mother's contention that petitioner failed to establish by clear and convincing evidence that she failed to adequately plan for her children's future. In support of this position, the mother contends that despite her diminished intelligence and her "complete submissiveness to the

father," she attended and completed all parenting classes and programs as mandated and engaged in individual therapy, and that she maintained a full-time job and consistently visited with her children as allowed. Thus, she contends, she did everything reasonably possible to overcome any impediment to the return of her children.

We disagree. For over a year after the service plan was initially promulgated, the mother rejected all overtures from petitioner to attend the mandated classes and counseling. Moreover, her belated participation resulted in no improvement in her parenting skills or her understanding of, or ability to cope with, the problems which originally caused petitioner to remove the children from her home. Although the father was convicted of second degree assault with respect to the injuries inflicted upon Jamal and Alonzo, the mother hopes to reunite the children and herself with the father upon his release from prison. She holds this hope despite her failure to address her total domination by the father, his culpability in neglecting and abusing the children and her own obligation to protect and care for her children (*see, Matter of Jesus JJ.*, 232 AD2d 752, 753-754, *lv denied* 89 NY2d 809; *Matter of Michelle F.*, 222 AD2d 747, 749).

Although the mother consistently visited with her children while in foster care, the record reveals that she failed to declare her desire for their return and is incapable of interacting with and appropriately disciplining the children. We cannot say on this record that the mother has effectively made use of the services and programs afforded by petitioner and removed the existing obstacles which impede the children's return. Under such circumstances, Family Court correctly determined that, despite the diligent efforts of petitioner, the mother failed to plan for the return of the children as required.

These circumstances dictate the conclusion that there is no merit to the mother's assertion that Family Court erred in determining that the best interests of the children require termination of the mother's parental rights. Family Court's termination of her parental rights was not premised solely on her inability to take the necessary steps to insure the children's safety from any further neglect or abuse by the father. As previously noted, the mother refuses to accept responsibility for her role in the neglect and abuse of these children or to evince any desire to rectify those problems. Although the children have been in the care and protection of petitioner for nearly three years, the mother has made no substantial progress in her parenting skills or the development of any ability to protect the

children from future harm. Thus, the record amply supports the conclusion that the best interests of the children require the termination of the mother's parental rights.

The father's appeal focuses upon two periods of time, the first of which is from May 24, 1997, when the children came into the care of petitioner, to June 18, 1998, when he was imprisoned for the assault conviction. The second time period is from June 18, 1998 to April 22, 1999, the date of the Family Court hearing. The father asserts that during the first period of time, petitioner failed to exercise diligent efforts to reunite the family because he was precluded by court order from visitation with the children until such visitation was recommended by a therapist and petitioner failed to take the children to a therapist for at least 10 months. While it is true that petitioner failed to have the children assessed, the father's argument ignores the other aspects of the court order and the efforts which petitioner made during this time frame. Petitioner was diligent in every other aspect of the service plan it devised to encourage the relationship between the father and the children. To this end, petitioner conducted three service plan reviews and, although the father was invited to each, he attended only one, where he advised the caseworker that the obligations he was required to meet were "all crap." Further, the father's argument ignores the condition of visitation with his children that required him to attend and complete an abusive parent program, which he failed to do, although petitioner consistently reminded him of this obligation and urged him to participate. He expressed no desire to attend such a program until after his incarceration. Additionally, the record establishes that the father failed to avail himself of, *inter alia*, mental health counseling and parenting classes included in the service plan. Thus, we are unpersuaded that Family Court erred in concluding that petitioner discharged its statutory duty to exercise diligent efforts to strengthen the relationship between the children and the father (*see, Matter of Lisa Z.*, 278 AD2d 674, 676-677; *Matter of Jawan Y.*, 278 AD2d 540, 541).

Family Court did find that, during the second time period, petitioner failed to exercise the required diligence to strengthen the parent-child relationship and reunite the family. However, Family Court did conclude—and the record supports such conclusion—that petitioner was excused from this obligation since such efforts would have been detrimental to the best interests of the children (*see*, Social Services Law § 384-b [7] [a]; *Matter of Abdul W.*, 224 AD2d 875, 876). The record demonstrates that the father, despite his plea of guilty to as-

sault in the second degree, refused to accept responsibility for the serious injuries to Jamal and Alonzo, and there is support in the record that the children fear him. In addition, although he had completed a 10-week parenting class at the time of the dispositional hearing, he had not yet completed a substance abuse program or entered an anger management program. Given that the father's long-term plan for the children was to return them to the custody of their mother, a plan which is profoundly unrealistic, and that the children had been in foster care in excess of three years before the father actually began to address the underlying problems which prevented reuniting the family unit, Family Court's determination that the best interests of the children excused any diligent efforts on the part of petitioner during this time frame is appropriate. Accordingly, we find no reason to disturb Family Court's determination with respect to the father's failure to plan for the future of the children and the termination of his parental rights.

Cardona, P. J., Mercure, Spain and Carpinello, JJ., concur. Ordered that the orders are affirmed, without costs.