■ In the Matter of NAHIA M. and Others, Children Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CRYSTAL P., Appellant. [833 NYS2d 711]—

Carpinello, J. Appeal from that part of an order of the Family Court of Tompkins County (Sherman, J.), entered June 21, 2006, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Nahia M. and Naryan M. to be permanently neglected children, and terminated respondent's parental rights.

Following fact-finding and dispositional hearings, respondent's parental rights were terminated with respect to her children (four boys born between 1997 and 2002). The children have been in petitioner's custody since February 2004 and have been separated in pairs in foster homes (the younger two were placed together and the older two were placed together). Of note, this was the second placement for the three older children, the first one lasting approximately 17 months. All four of the children have special needs and are difficult to manage. While respondent's medical condition—a congenital liver disorder for which she received a liver transplant in April 2005—was an underlying issue throughout the children's placement, Family Court gave this factor the appropriate weight in the context of its decision to terminate her parental rights. Specifically, the court excluded from the statutory one-year period the time that she spent in the hospital and convalescing (see Social Services Law § 384-b [7] [d] [ii]). Notably, respondent appeals only with respect to the older two boys.

Family Court properly adjudicated respondent's older two boys to be permanently neglected and terminated her parental rights. Contrary to respondent's contention, petitioner met its burden of establishing by clear and convincing evidence that it made the requisite diligent efforts to encourage and strengthen her relationship with them (see Social Services Law § 384-b [7] [a]; Matter of Star Leslie W., 63 NY2d 136, 142 [1984]; Matter of Sheila G., 61 NY2d 368, 384-386 [1984]). Upon our review of the record, we find that petitioner consistently provided respondent with a variety of services aimed at addressing her parental deficiencies and restoring the parent-child relationship, including parenting classes, individual mental health counseling and anger management counseling. The children themselves received special education and therapeutic services. Petitioner also provided supervised visitation and ultimately provided both facilitated and therapeutic visitation sessions. Transportation

assistance was always offered so that respondent could access services, attend medical appointments and visit with the children. Petitioner also reviewed the service plan with respondent and kept her abreast of all meetings and medical appointments pertaining to the children, as well as their progress. These efforts were more than sufficient to discharge petitioner's obligation (*see* Social Services Law § 384-b [7] [a], [f]; *Matter of Raena O.*, 31 AD3d 946, 948 [2006]; *Matter of Douglas H.*, 1 AD3d 824, 824-825 [2003], *lv denied* 2 NY3d 701 [2004]).

In arguing that petitioner failed to use diligent efforts, respondent cites its alleged failure to explore a plan for her to surrender two of the four children. According to respondent, petitioner should have held meetings on this issue and offered her supportive counseling. The record reveals, however, that respondent constantly vacillated about surrendering her rights to the two older children in favor of reuniting with the two younger ones. Consistent with this stated goal, weekly, supervised visitation was scheduled with just the two younger children. To be sure, she never reached a concrete decision on this issue. When respondent would discuss the possibility of surrendering the two older children, she was repeatedly advised to discuss the matter with her attorney and therapist. In the absence of an unequivocal decision on respondent's part to surrender her parental rights to any of the children, petitioner remained obligated to exercise diligent efforts to encourage and strengthen her relationship with all four and, thus, cannot now be faulted for actually doing so.[1]

Respondent also attacks petitioner's efforts by claiming that it did nothing to gain an understanding into the nature of her liver disorder or assist her in addressing it. To the contrary, the record reveals that petitioner kept abreast of respondent's disorder, encouraged her to attend appointments with her treating physician, offered transportation services for medical appointments and ultimately delayed seeking termination of her parental rights because of this illness, thus allowing her additional time to plan for the children's return.

Next, the record further supports Family Court's finding that respondent failed to realistically plan for the future of the children (*see* Social Services Law § 384-b [7] [a], [c]). The record reveals that both before and after her liver transplant, respondent failed to become consistently and actively involved in the children's care. For reasons unrelated to her health, she

---

1. To be sure, the licensed clinical social worker who conducted the facilitated visitation testified that the prospect of respondent raising only two of the children did not eliminate concerns about her parenting ability.

regularly failed to attend office visits with her caseworker and essential meetings pertaining to the children's special education, as well as doctors' appointments for them.[2] She also refused, despite repeated directives, to contact the children's mental health providers and teachers in order to gain insight into their special needs.[3] She also showed little progress in implementing parenting techniques during visitation, which never graduated to unsupervised visitation (*see Matter of Douglas H., supra* at 824-825; *Matter of Jamal B.*, 287 AD2d 898, 900 [2001], *lvs denied* 97 NY2d 609 [2002]). Indeed, despite facilitated and therapeutic visitation sessions, significant concerns continued to exist about her parenting and about the safety of the children in her care.

We are likewise unpersuaded that a suspended judgment would have been in the children's best interests. Given the special needs of the children and their demonstrated need for permanency, and further noting that they have spent most of their lives in foster care and that their current foster mother desires to adopt them if her health permits, we perceive no basis for disturbing Family Court's finding that their best interests will be served by terminating respondent's parental rights (*see Matter of Star Leslie W.*, 63 NY2d 136, 147 [1984], *supra*; *Matter of Douglas H., supra* at 826; *Matter of Tabitha BB.*, 304 AD2d 875, 876 [2003]; *Matter of Brandon OO.*, 304 AD2d 873, 874 [2003]).

Respondent's remaining contentions have been considered and found to be unavailing.

Cardona, P.J., Peters, Spain and Kane, JJ., concur. Ordered that the order is affirmed, without costs.

---

**2.** Tellingly, when asked the reason why she missed appointments after her transplant, she responded, "There isn't any." Yet, she acknowledged that she was faithful to her attendance at a local community college during the same time period.

**3.** As noted by the social worker who conducted the facilitated visitation, if a parent is not actively involved in a child's therapy, it compromises the work with that child. To this end, we are compelled to point out that respondent acknowledged during her testimony that her failure to attend services and appointments for the children "was a mistake" and affected her ability to plan for their future.