Kavanagh, J.
Appeal from an order of the Supreme Court (Sherman, J.), entered October 15, 2007 in Tompkins County, which granted petitioner’s application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent’s child to be permanently neglected, and terminated respondent’s parental rights.
Respondent is the father of a daughter born in 2004. In March 2005, petitioner filed a neglect proceeding pursuant to Family Ct Act article 10 against respondent and the child’s mother. One month later, pursuant to a temporary custody order, the child was removed from her home and placed with her maternal grandmother. In November 2005, an order of neglect was issued after respondent and the mother made admissions of neglect. The child remained in the care of her grandmother and, after numerous permanency hearings were conducted, the order awarding the grandmother temporary custody was extended.
In March 2007, petitioner commenced this proceeding pursuant to Social Services Law § 384-b alleging that respondent had permanently neglected the child, and it sought termination of his parental rights.[1] After a hearing, Supreme Court found that respondent had permanently neglected the child and, at the conclusion of the dispositional hearing, terminated his parental rights, prompting this appeal.
The permanent neglect petition alleged that, notwithstanding the diligent efforts by petitioner to strengthen the parental relationship between respondent and the child, he failed to maintain contact and plan for the future of the child (see Social Services Law § 384-b). The petition alleged that respondent failed to provide a safe and stable home for the child and fulfill his commitment to complete certain programming—including one that focused on domestic violence—and he did not participate, as directed, in an evaluation to determine his dependence upon drugs or alcohol. It also claimed that he persistently violated the terms of an order of protection, as well as the terms of his parole supervision[2] —both of which included a requirement that he have no contact with the child’s mother—and that *984 as a result of his repeated violations, respondent was incarcerated from March 2005 until February 2007, and then again in March 2007.* [3] On appeal, respondent concedes that there was sufficient evidence to support the finding that he had permanently neglected the child, however, he argues that Supreme Court should have issued a suspended judgment allowing for the passage of a period of time to determine if termination of his parental rights was in the child’s best interest.
Once a child has been adjudicated to be permanently neglected, the court must focus on what disposition involving the child’s future care and custody is in the child’s best interest (see Family Ct Act § 631; Matter of Angelica VV., 53 AD3d 732, 733 [2008]; Matter of Raine QQ., 51 AD3d 1106, 1106 [2008], lv denied 10 NY3d 717 [2008]). There is “no presumption that any particular disposition, including the return of a child to a parent, promotes such interests” (Matter of Angelica VV., 53 AD3d at 733; see Family Ct Act § 631; Matter of Arianna OO., 29 AD3d 1117, 1117-1118 [2006]).
We can find no basis upon which to disturb Supreme Court’s decision that the child’s best interest was served by the termination of respondent’s parental rights (see Matter of Nahia M., 39 AD3d 918, 921 [2007]; Matter of James X., 37 AD3d 1003, 1007 [2007]). The child has resided with the maternal grandmother since she was five months old, and respondent, for much of that time, has been incarcerated. While he may have made meaningful efforts to remain in contact with the child during his time in prison, respondent’s chronic failure to comply with the terms of the orders of protection as well as the conditions of his parole, coupled with his apparent inability to control his impulsive and aggressive behavior, raises serious and legitimate questions as to his ability to provide this child with a safe and stable environment. He has provided no proof that he was ever able to obtain gainful employment or secure adequate housing within which he could raise the child. Equally disturbing is the fact that, since his release from prison in July 2007, another complaint has been filed against him alleging a violation of his parole, *985 which if proven, would expose respondent to yet another extended term of imprisonment.[4]
While respondent has been incarcerated, the child’s primary caregiver has been her grandmother. By all accounts, the child appears to be doing well, in a stable environment that has been her home for her entire life, and has thrived while in the grandmother’s custody and under her care.[5] Taken as a whole, these facts provide a sound and substantial basis for Supreme Court’s conclusion that the immediate termination of respondent’s parental rights was in the child’s best interest (see Matter of Angelica VV., 53 AD3d at 733; Matter of Jay de M., 36 AD3d 1168, 1170 [2007], lv denied 8 NY3d 809 [2007]; Matter of Joshua BB., 27 AD3d 867, 869 [2006]). Giving deference to the court’s findings, we agree that “[freeing the child for adoption provided [her] with prospects for permanency and some sense of the stability [she] deserved, rather than the perpetual limbo caused by unfulfilled hopes of returning to respondent’s care” (Matter of Raine QQ., 51 AD3d at 1107) and, therefore, termination was appropriate.
Mercure, J.P., Peters, Lahtinen and Malone Jr., JJ., concur. Ordered that the order is affirmed, without costs.

. After a finding that the mother permanently neglected the child, she surrendered her parental rights.

. A temporary order of protection was issued in December 2004 that required respondent to stay away from the mother and to refrain from com *984 municating in any way with her. In May 2005, after respondent was convicted of criminal mischief in the fourth degree, an order of protection was issued that again required him to stay away from the mother and refrain from having any contact with her. One month later, respondent was convicted of criminal contempt in the second degree for violating the terms of this order and was subsequently sentenced to nine months in jail.

. The mother was pregnant in 2007 apparently with respondent’s child; she was due to deliver in November 2007.

. In March 2007, shortly after he had been released from jail and placed on parole, respondent was again found in the presence of the child’s mother and was charged with criminal contempt in the first degree as well as a violation of the terms of his parole. He subsequently admitted to violating the conditions of his parole and, after being convicted of criminal contempt in the second degree, was sentenced to an additional six months in prison. He was released in July 2007 and again placed on parole. On September 15, 2007, he was again arrested for criminal contempt in the first degree and charged with violating the terms of the order of protection by placing numerous threatening phone calls to the child’s mother’s home, as well as making threatening phone calls to another person. In addition, respondent admitted to consuming alcoholic beverages and again was charged with violating the conditions of his parole. Finally, he was also charged with harassment in connection with a complaint made by another woman who alleged that he had threatened to kill her. These charges, as well as his most recent parole violation, were pending on the date of the dispositional hearing.

. The grandmother has indicated that she wants to adopt the child.