■ In the Matter of JAMES X., a Child Alleged to be Permanently Neglected. CORTLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JOHN X., Appellant. (And Another Related Proceeding.) [830 NYS2d 608]—

Spain, J. Appeals from two orders of the Family Court of Cortland County (Campbell, J.), entered August 7, 2006, which, inter alia, granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate James X. a permanently neglected child, and terminated respondent's parental rights.

In addition to James (born 1999), respondent is the father of four other children by three women. James lived with his mother and half brother Kodie in Chenango County until the children were removed from the mother's care in February 2000. The two children were subsequently returned to the mother's care in March 2001, after which they briefly lived with the mother and respondent in Cortland County until—according to the mother—he kicked them out. In February 2004, the children were once again removed from the mother by petitioner and placed together in a foster home and, in March 2006, the mother surrendered her parental rights.

After James was placed in foster care, petitioner began to work with respondent to develop a case plan to prepare him to be a resource for his son. The plan was necessitated, in part, by respondent's history of sexual misconduct. In 1991, respondent pleaded guilty to sexual misconduct with his nine-year-old niece, for which he was sentenced to three years of probation and directed to complete sex offender counseling; respondent was violated for failure to participate in the counseling program, and did not complete it. In 1994, Family Court determined that he had sexually abused his four-year-old son, Shaun; he was again required to complete sex offender treatment, and an order of protection was entered and these orders were upheld by this Court (*Matter of Shaun X.*, 228 AD2d 730 [1996]).

Against this backdrop, part of petitioner's plan for respondent was that he attend and complete sex offender treatment as well as parenting classes. Petitioner also arranged weekly supervised visitation for respondent and James, which respondent exercised, and he completed a Parent Aggression Reduction Group and a Nonviolent Alternatives Program. During this time, he was repeatedly informed that attendance in and completion of sex offender treatment was an essential part of the plan. In response, on many occasions respondent denied ever committing sexual abuse and, alternatively, stated to

caseworkers that he did not need treatment and offered various other baseless excuses for his refusal. Moreover, during the hearing, respondent again denied the past acts of abuse, admitted that he had not completed sex offender treatment and asserted that he was not in need of such treatment. Also in 2004, petitioner produced a home study which revealed that respondent had an extensive history of indicated child maltreatment reports, including sexual victimization of yet another child. The study also revealed that several other adults in the household in which he was living had significant and extensive child protective histories.

In March 2006, respondent and his mother petitioned for joint custody of James, and petitioner commenced a permanent neglect proceeding against respondent. Family Court, among other things, dismissed the custody petition as to respondent's mother because she failed to allege extraordinary circumstances. In July 2006, petitioner removed James from his foster home (and from his half brother) and placed him with another family, his current foster parent.

After a full hearing was completed in August 2006, Family Court issued an order finding that respondent had permanently neglected James. At the dispositional hearing, another of respondent's caseworkers testified that as recently as March 2006, she had urged respondent to engage in sex offender treatment, but he again denied his past abuse. Subsequently, the court issued a decision terminating respondent's parental rights and dismissing his custody petition. Respondent now appeals from the finding of permanent neglect and the termination of his parental rights.

Family Court justifiably determined that respondent permanently neglected James. Pursuant to Social Services Law § 384-b (7) (a), a child in the care of an authorized agency may be found to be permanently neglected when a parent has failed—for a period of more than one year from the date the child came into care—substantially and continuously or repeatedly to plan for the future of the child, although physically and financially able to do so notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship (see Social Services Law § 384-b [7] [a]; see also Matter of Elijah NN., 20 AD3d 728, 729 [2005]). The threshold inquiry is whether the petitioning agency has proved by clear and convincing evidence that it has exercised such diligent efforts (see Matter of Sheila G., 61 NY2d 368, 373 [1984]; Matter of Willard L., 23 AD3d 964, 964-965 [2005], lv denied 6 NY3d 708 [2006]). An agency fulfills its obligation, as here, when it encourages a meaningful relation-

ship between the parent and child by offering appropriate services, such as counseling and treatment opportunities, arranging supervised visitation and creating a service plan to move towards unification, and encourages the parent's participation (*see* Social Services Law § 384-b [7] [f]; *Matter of Willard L., supra* at 965; *Matter of Sadie K.,* 249 AD2d 640, 641 [1998]). However, only reasonable efforts need be made and an agency will be deemed to have fulfilled its duty if its efforts are rebuffed, as here, by an uncooperative or indifferent parent (*see Matter of Star Leslie W.,* 63 NY2d 136, 144 [1984]; *Matter of Sadie K., supra* at 641). Clearly, petitioner was not required to forgo requiring respondent's participation in a sex offender program or to formulate an alternative plan to accommodate his refusal to admit his role in the abuse (*see Matter of Kaitlyn R.,* 279 AD2d 912, 913-914 [2001]).

Here, the foregoing shows that petitioner worked with respondent to create a plan to prepare him to be a resource for James and, while respondent completed some programs, he repeatedly refused to participate in sex offender treatment, proffering myriad invalid excuses, during which petitioner faithfully encouraged his participation and made clear that attendance was necessary. As such, according great deference to Family Court's factual determinations (*see Matter of Joshua BB.,* 27 AD3d 867, 869 [2006]; *Matter of Elijah NN., supra* at 730), we affirm its finding that petitioner demonstrated by clear and convincing evidence that it exercised diligent efforts to assist respondent.

Also without merit is respondent's contention that Family Court erred in finding that he failed to demonstrate that he planned for the future of his child. Once an agency has demonstrated that it has made the requisite diligent efforts, the parent must show that his or her problems have been addressed and that there is a meaningful plan for the child's future (*see Matter of Kaitlyn R., supra* at 914). As used in Social Services Law § 384-b (7) (a), to "plan for the future of the child" means to take the necessary steps to provide an adequate, stable home and parental care for the child, including the utilization of medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent (*see* Social Services Law § 384-b [7] [c]; *Matter of Elijah F.,* 280 AD2d 720, 721 [2001]). Respondent's failure to accept responsibility for having sexually abused children or to participate in a program supported a finding that he has not remedied the problem and, thus, his failure to adequately plan for the future (*see Matter of Sarah TT.,* 294 AD2d 627, 628-629 [2002], *lv*

*denied* 98 NY2d 611 [2002]; *Matter of Kaitlyn R., supra* at 914). In light of overwhelming evidence including respondent's own testimony, the court properly found that respondent failed to plan for the future of James.

Next, respondent failed to request a suspended judgment at the conclusion of the dispositional hearing and, thus, his claim related thereto has not been preserved for review (*see Matter of Bryce R.W.*, 32 AD3d 1312, 1313 [2006]). In any event, the disposition following a hearing on permanent neglect shall be made solely on the basis of the best interests of the child and there is no presumption that favors returning a child to a parent (*see* Family Ct Act § 631; *Matter of Arianna OO.*, 29 AD3d 1117, 1118 [2006]; *Matter of Joshua BB., supra* at 869). A suspended judgment is a brief grace period designed to afford a parent a second chance where the court determines it is in the child's best interest (*see Matter of Michael B.*, 80 NY2d 299, 310-311 [1992]; *Matter of Joshua BB., supra* at 869). According deference to Family Court's choice of dispositional alternatives, we discern no basis upon which to disturb the court's termination of respondent's rights rather than ordering a suspended judgment (*see Matter of Arianna OO., supra* at 1118; *Matter of Jeremiah BB.*, 11 AD3d 763, 766 [2004]).

Finally, it is axiomatic that when parental rights are terminated pursuant to an adversarial proceeding that results in a finding of permanent neglect, the court lacks authority to permit visitation to a respondent (*see Matter of Labron P.*, 23 AD3d 943, 945 [2005]; *Matter of Jessi W.*, 20 AD3d 620, 621 [2005]).

Mercure, J.P., Crew III, Mugglin and Rose, JJ., concur. Ordered that the orders are affirmed, without costs.