■ In the Matter of GEORGE M., a Child Alleged to be Permanently Neglected. WARREN COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CHARLOTTE M., Appellant. (And Another Related Proceeding.) [851 NYS2d 698]—

Malone Jr., J. Appeals from two orders of the Family Court of Warren County (Breen, J.), entered February 1, 2007 and March 8, 2007, which, among other things, granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate George M. a permanently neglected child, and terminated respondent's parental rights.

Respondent is the biological mother of a son (born in March 2005). In June 2005, following the filing of a neglect petition and the holding of a preliminary hearing, respondent consented to the temporary removal of the child from her care and his placement in petitioner's custody. Petitioner had had prior contact with respondent in June 2004 when her four other children were placed in foster care after it was discovered that the family was homeless and that respondent was unable to provide for the children's basic needs. At that time, petitioner developed a risk assessment and service plan to enable respondent to regain custody of these children. In December 2005, Family Court issued an order of protection and an order of fact-finding and disposition with placement concerning the child that identified conditions similar to those contained in the prior service plan that respondent had to satisfy in order to regain custody of this child.

Respondent, however, failed to comply with a number of the conditions set forth in the December 2005 orders and, in May 2006, a petition was filed charging her with violating the same.[1] In August 2006, another petition was filed charging respondent with permanently neglecting the child and seeking to terminate her parental rights. Following an extended fact-finding hearing, Family Court issued an order finding that respondent had permanently neglected the child and had violated the prior orders. Family Court then held a dispositional hearing and issued a subsequent order terminating respondent's parental rights based upon its finding of permanent neglect.[2] Respondent appeals from both orders.

Initially, "[t]o obtain a termination of parental rights based upon permanent neglect, petitioner is required to prove by clear and convincing evidence that the parent failed to maintain contact with or plan for the future of his or her child for one year after the child came into petitioner's custody notwithstanding petitioner's diligent efforts to strengthen the parent-child relationship" (*Matter of Melissa DD.*, 45 AD3d 1219, 1220 [2007], *lv denied* 10 NY3d 701 [2008]; *see* Social Services Law § 384-b [7] [a]). The threshold inquiry is whether petitioner has undertaken diligent efforts to strengthen the parental relationship by, among other things, providing "counseling, making suitable arrangements for visitation, providing assistance to the parents to resolve or ameliorate the problems preventing discharge of the child to their care and advising the parent at appropriate intervals of the child's progress and development" (*Matter of Star Leslie W.*, 63 NY2d 136, 142 [1984]; *see* Social Services Law § 384-b [7] [f]; *see e.g. Matter of Aldin H.*, 39 AD3d 914, 915 [2007]; *Matter of Raena O.*, 31 AD3d 946, 947-948 [2006]). "Once [petitioner] has demonstrated that it has made the requisite diligent efforts, the parent must show that his or her problems have been addressed and that there is a meaningful plan for the child's future" (*Matter of James X.*, 37 AD3d 1003, 1006 [2007] [citations omitted]). More specifically, planning for the future of the child means "tak[ing] the necessary steps to provide an adequate, stable home and parental care for the child, including the utilization of medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (*id.*; *see* Social Services Law § 384-b [7] [c]; *Matter of Nathaniel T.*, 67 NY2d 838, 840 [1986]).

---

1. Prior to the filing of this petition, respondent surrendered her parental rights to her other four children.

2. Respondent's husband, the child's biological father, voluntarily surrendered his parental rights at the fact-finding hearing.

The record discloses that petitioner worked with respondent for nearly two years and made a variety of services available to her to enable her to meet the conditions of the December 2005 orders and to regain custody of her son. These included having her enrolled at no cost in the Intensive Aftercare and Prevention Program through a local agency that provided her with individual and family counseling as well as instruction in areas such as parenting, household finance and personal hygiene. In addition, petitioner also provided private mental health counseling referrals, foster care services, supervised visitation, transportation assistance and housing referrals. Notwithstanding the services provided, evidence was presented at the fact-finding hearing that respondent repeatedly missed counseling appointments and failed to complete the counseling recommended by a number of different professionals resulting in little progress with her mental health, anger management and marital problems. Similarly, respondent was often late, left early or entirely missed her supervised visitation appointments with her son. During the visits that she did attend, she sometimes exhibited improper parenting skills as, for example, when she attempted to feed inappropriate food to her infant son. In addition, respondent changed residences frequently, moving 12 times in the 11 months preceding the fact-finding hearing, and she lived in motel rooms, campers, trailers and apartments that were not suitable for a child. While she held a number of part-time jobs, her employment was sporadic and she continued to exercise poor judgment in budgeting her money. Furthermore, she continued to stay in an abusive relationship with her husband without regard to the impact this would have on her reunification with her son. Although respondent participated in anger management counseling and completed a parenting class, she did not avail herself of many of the services necessary to regain custody of her son. Significantly, she did not exhibit an awareness of the issues leading to her son's removal or a commitment to making the changes needed to insure a stable living situation justifying his return. In view of this, we conclude that clear and convincing evidence supports Family Court's finding of permanent neglect (see e.g. Matter of Deajah Shabri T., 44 AD3d 1060 [2007]; Matter of Jonathan Jose T., 44 AD3d 508 [2007]).

In addition, contrary to respondent's claim, the proof amply supports Family Court's finding that respondent violated the December 2005 orders "willfully and without just cause" (Family Ct Act § 1072). Respondent's limited financial resources are not an excuse for her failure to comply with the conditions set forth in the December 2005 orders, many of which had no

monetary implications. Furthermore, under the circumstances presented, we are not persuaded that Family Court should have imposed a suspended judgment instead of terminating respondent's parental rights. The controlling consideration following a dispositional hearing is the best interests of the child and "[t]here is no presumption that those interests will be served best by return to the parent" (*Matter of Star Leslie W.*, 63 NY2d at 147-148; *see* Family Ct Act §§ 631, 633). Given the considerable time and resources that petitioner devoted to respondent's case and respondent's failure to demonstrate significant progress in resolving the issues that caused her son's removal in the first instance, we defer to Family Court's choice of dispositional alternatives (*see Matter of James X.*, 37 AD3d at 1006; *see also Matter of Melissa DD.*, 45 AD3d at 1221).

Mercure, J.P., Peters, Spain and Lahtinen, JJ., concur. Ordered that the orders are affirmed, without costs.