■ In the Matter of GERALD BB. and Others, Children Alleged to be Permanently Neglected. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; SHEILA CC., Appellant. (Proceeding No. 1.) (And Another Related Proceeding.) In the Matter of YOLANDA ZZ., Appellant, v SHEILA CC. et al., Respondents, and SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent. (Proceeding No. 2.) [857 NYS2d 314]—

Kavanagh, J. Appeals (1) from an order of the Family Court of Schenectady County (Cortese, J.), entered March 1, 2007, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights, and (2) from an order of said court (Taub, J.H.O.), entered May 7, 2007, which dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the subject children.

Respondent Sheila CC. (hereinafter the mother) is the mother of seven children. On June 30, 2004, the three youngest children, Gerald BB. (born in 1998), Shalonda BB. (born in 2000) and Bishop BB. (born in 2003), were removed from her care and custody by the Schenectady County Department of Social Ser-

vices (hereinafter DSS)[1] and placed in foster care pursuant to Family Ct Act § 1024. DSS filed a neglect petition and Family Court held a hearing, at which the mother failed to appear. By order entered in June 2005, Family Court (Siebert, Jr., J.) adjudicated the children to be neglected and ordered them to remain in the custody of DSS, with certain terms and conditions being placed upon the mother.

After the children were in DSS custody for more than a year, DSS filed a petition in August 2005 pursuant to Social Services Law § 384-b seeking an adjudication that the children had been permanently neglected.[2] After a fact-finding hearing was held, Family Court, on June 24, 2006, found that the mother had, among other things, permanently neglected the children. Before the dispositional hearing was held, petitioner in proceeding No. 2, the children's maternal aunt (hereinafter the aunt), filed a petition for custody of the children. The hearing on this petition was held in abeyance pending the outcome of the dispositional hearing in connection with the permanent neglect proceeding. After the dispositional hearing had been conducted, Family Court (Cortese, J.), by order entered March 1, 2007, issued an order which terminated the mother's parental rights, placed the children in the care and custody of DSS and freed them for adoption. Thereafter, by order entered May 7, 2007, Family Court (Taub, J.H.O.) dismissed the aunt's petition for custody. The mother and the aunt now appeal.

The mother raises several issues on this appeal. They include her contention that DSS failed to exercise diligent efforts to strengthen the parental relationship between her and her three children, that the record does not support a finding by clear and convincing evidence that the mother permanently neglected her children or that it was in the children's best interests to terminate her parental rights and free them for adoption and that she was deprived of effective representation due to her counsel's failure to file a notice of appeal from the dispositional order issued after the Family Ct Act article 10 neglect proceeding in which she failed to appear.

To the extent that the mother's ineffective assistance of counsel claim relates to the prior neglect proceeding, it is not

---

1. DSS is the petitioner in proceeding No. 1 as well as a respondent in proceeding No. 2.

2. In November 2005, DSS also brought a violation proceeding claiming that the mother had violated the order of disposition. Additionally, a similar permanent neglect petition was filed against the father, respondent Gerald DD., who has not appealed Family Court's subsequent order which terminated his parental rights.

properly before this Court (*see Matter of Bryan W.*, 299 AD2d 929, 930 [2002], *lv denied* 99 NY2d 506 [2003]), and the mother's proper remedy was to seek to vacate the default judgment (*see* Family Ct Act § 1042; *Matter of Elizabeth T.*, 3 AD3d 751, 753 [2004]). In any event, as to the permanent neglect proceeding, counsel was effective in that he thoroughly cross-examined witnesses, presented witnesses supportive of the mother's position, made appropriate objections, elicited evidence of the mother's attempts to address her ongoing problem with substance abuse and forcefully urged Family Court to deny the permanent neglect petition. Viewed in its totality, the representation afforded the mother in this proceeding was both meaningful and effective (*see Matter of Brenden O.*, 20 AD3d 722, 723 [2005]; *Matter of Anjoulic J.*, 18 AD3d 984, 987-988 [2005]).

The mother next argues that DSS failed to establish that it made diligent efforts to strengthen the bond between the mother and the children, as required by Social Services Law § 384-b (7) (f), and the evidence did not support a finding of permanent neglect. In the context of a petition seeking termination of parental rights based upon a finding of permanent neglect, the agency must establish by clear and convincing evidence (*see* Social Services Law § 384-b [3] [g]; *Matter of Melissa DD.*, 45 AD3d 1219, 1220 [2007], *lv denied* 10 NY3d 701 [2008]) first, that it made diligent efforts to strengthen the parent-child relationship and, second, that despite those diligent efforts, the parent has failed to maintain contact with the child or participate in plans for the child's future for one year after the agency has been charged with the child's care and custody (*see* Social Services Law § 384-b [7]; *Matter of Gregory B.*, 74 NY2d 77, 86 [1989]; *Matter of George M.*, 48 AD3d 926, 927 [2008]). The agency is required to use diligent efforts to assist, develop and encourage a meaningful relationship between the parent and child, including cooperating with the parents to develop a plan that is designed to provide the child and family with appropriate services. It also must use diligent efforts to arrange for the parent, if possible, to visit the child, or, if the parent is incarcerated, determine if such visits are in the child's best interests. Finally, the agency must also seek to provide the parents with available services that are designed to resolve or ameliorate issues, the existence of which have prevented the child from being discharged from the care and custody of the agency, and keep the parents informed as to the child's progress, development and health while in foster care.

Here, the mother complains that DSS failed to make a

meaningful effort to address her needs as it relates to the children's welfare. She denies that there was any real communication between her and DSS regarding what progress her children had made or what needed to be done in the future to ensure their health and welfare. She also complains that the drug and alcohol treatment options offered her were limited and of little use in dealing with her addiction. The record, to be frank, is at odds with most of the mother's contentions. DSS caseworkers testified not only that written reports had been routinely sent to the mother charting her children's progress while they were in foster care but, also, that efforts were repeatedly made by members of DSS to involve the mother in discussions regarding plans for the children's future. DSS also documented her chronic failure to attend or participate in these meetings despite agreeing to do so. Caseworkers also sought to involve her in counseling regimens designed to enhance her parenting skills and enroll her in drug and alcohol programs to address her addictions. In fact, throughout this process, the mother not only consistently failed to cooperate with DSS, but has refused to sign appropriate releases or participate in screening procedures to confirm that she was, in fact, substance free as she claimed. Finally, DSS, in an effort to establish and foster a meaningful relationship between the mother and her children, arranged for her, while incarcerated, to have visits with the children. Based upon the record before us, there is clear and convincing evidence that DSS made a diligent effort to strengthen the relationship that the mother had with her children and to facilitate their ultimate return to her care and custody.

Nor do we agree that the finding of permanent neglect was unsupported by the evidence (see Social Services Law § 384-b [7] [a]). The children had been in DSS custody and in foster care for more than two years as of the date of the fact-finding hearing. In the original dispositional order issued by Family Court, the mother was directed, as part of the plan for the children's future, to complete drug treatment programming, participate in parenting classes and develop a suitable home environment in which the children would live if returned to her custody. Instead, the mother, during this period, was incarcerated on two separate occasions, the first for 60 days and the second for a six-month period. She also continued to abuse alcohol and drugs, testing positive for cocaine in February 2005. She was often late and frequently misplanned visits with her children and simply did not recognize the impact that this neglect had on them. When with them, she did not, in the opinion of the supervising caseworker, bond with any of the children or

make any progress in establishing a wholesome relationship with them. Finally, she continued to reside with the father, who she has charged with and who has admitted to an ongoing history of substance abuse. That relationship cannot provide the type of living environment that would be suitable for the health and welfare of her children if they were returned to her. Accordingly, DSS has established by clear and convincing evidence that the mother permanently neglected the children by failing to plan for their future and has not made a meaningful effort to be part of their lives for a period in excess of one year (*see Matter of Antonio EE. v Schoharie County Dept. of Social Servs.*, 38 AD3d 944, 946-947 [2007], *lv denied* 8 NY3d 813 [2007]).

We are also convinced that Family Court properly concluded that termination of the mother's parental rights was in the best interests of the children (*see Matter of Jayde M.*, 36 AD3d 1168, 1170 [2007], *lv denied* 8 NY3d 809 [2007]). All three of the children have various psychological and/or behavioral needs requiring special treatment, which the mother has not only failed to provide, but refuses to recognize. The children have failed to bond with their mother during these visits, and the extended length of time that they have already been in foster care is obviously making it exceedingly difficult, if not impossible, for these children to develop a wholesome relationship with perspective adoptive parents. For this reason, it is in their best interests that they be removed from foster care and into an adoptive setting as soon as circumstances allow. In short, the children's best interests can only be served, at this stage of their lives and as shown by the record, by the termination of the mother's parental rights.

Finally, we address the aunt's claim that Family Court erred by dismissing, without a hearing, her petition to take custody of the three children. While a hearing would have been appropriate, the fact is that the aunt testified at length on all relevant issues during the permanent neglect hearing and the court considered her testimony in its dispositional order. Her belated involvement in these proceedings, especially in light of the fact that she did not know that the children had been in foster care for almost two years, is disturbing and creates real issues as to whether their best interests could possibly be served by granting her petition. The court was well aware that the aunt was available and willing to accept responsibility for the children, yet decided, on this record, that it was in their best interests that they be freed for adoption. Given that finding, Family Court did not err by first determining whether the mother had permanently neglected her children prior to passing on the

aunt's custody petition because her petition was "immaterial to the determination of [the mother's] parental rights" (*see Matter of Andrew Z.*, 41 AD3d 912, 913 [2007]). Once the mother's parental rights were terminated and the children were placed in the permanent custody of DSS, the aunt's custody petition was properly dismissed (*see Matter of Herbert PP. v Chenango County Dept. of Social Servs.*, 299 AD2d 780, 781 [2002]), and her only recourse was to pursue adoption, not custody, of the three children (*see Matter of Patience B. v Administration for Children's Servs.*, 306 AD2d 473, 473 [2003]; *Matter of Herbert PP. v Chenango County Dept. of Social Servs.*, 299 AD2d at 781).

Peters, J.P., Spain, Rose and Lahtinen, JJ., concur. Ordered that the orders are affirmed, without costs.