■ In the Matter of JOSE Q., Alleged to be a Permanently Neglected Child. RENSSELAER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JOSE R., Appellant. [872 NYS2d 567]—

Malone Jr., J. Appeal from an order of the Family Court of Rensselaer County (Griffin, J.), entered January 7, 2008, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be permanently neglected, and terminated respondent's parental rights.

Respondent is the biological father of Jose Q. (born in 1998). He resided with the child from the child's birth until January 2002, when respondent was incarcerated. In September 2002, the child's mother placed the child in petitioner's custody under a voluntary placement agreement and, in December 2002, his placement was extended by means of a protective removal. Following a trial discharge to his mother in December 2005, the child was again returned to petitioner's custody in March 2006 due to the mother's inability to control the child's behavior. Respondent was released from prison in December 2006, but was returned in February 2007 after he failed to report to his parole officer.

In March 2007, petitioner commenced this proceeding pursuant to Social Services Law § 384-b seeking an adjudication that the child was permanently neglected and to terminate respondent's parental rights. Following fact-finding and dispositional hearings, Family Court concluded that the child was permanently neglected and terminated respondent's parental rights.* Respondent now appeals.

Initially, we note that in a permanent neglect proceeding, the petitioning agency "must establish by clear and convincing evidence first, that it made diligent efforts to strengthen the parent-child relationship and, second, that despite those diligent efforts, the parent has failed to maintain contact with the child or participate in plans for the child's future for one year after the agency has been charged with the child's care and custody" (*Matter of Gerald BB.*, 51 AD3d 1081, 1083 [2008], *lv denied* 11 NY3d 703 [2008] [citations omitted]; *see Matter of Gregory B.*, 74 NY2d 77, 86-87 [1989]; *Matter of George M.*, 48 AD3d 926, 927 [2008]). However, "[t]he requirement of demonstrating diligent efforts is not necessary . . . 'when an incarcerated parent has failed on more than one occasion to cooperate

---

* At the time of the fact-finding hearing, a petition was pending seeking to terminate the mother's parental rights.

with the agency in efforts to assist the parent in planning for the future of the child or in efforts to plan and arrange visits with the child' " (*Matter of Yvonne N.*, 6 AD3d 769, 770 [2004], *lv denied* 3 NY3d 604 [2004], quoting *Matter of Jawan Y.*, 274 AD2d 696, 697 [2000]; *see Matter of Shi'ann FF.*, 47 AD3d 1133, 1134 [2008]).

The record in this case reveals that respondent was not cooperative in planning for the child's future while he was incarcerated or during the brief period when he was released. Although petitioner's caseworkers sent respondent numerous letters advising him of periodic service plan reviews and requesting him to devise a plan for caring for his child, respondent failed to respond to many of the letters or to contact petitioner when he was released from prison. Respondent contacted petitioner only a handful of times during his lengthy incarceration, and the individuals that he suggested to care for the child in his absence were not suitable. The mother, who was one of the persons he suggested, suffered from mental and emotional problems that resulted in the removal of the child from her care. Respondent's cousin, another suggested caregiver, withdrew her petition for custody because she did not maintain suitable housing. Respondent's sister also withdrew her petition for custody. Although respondent filed his own custody petition in February 2007, he did not appear in court due to an order of protection that had been issued in favor of the mother and, shortly thereafter, was reincarcerated. Significantly, respondent had no contact with the child during the entire period of his incarceration and admittedly made no attempt to contact the child when he was released. Furthermore, respondent gave vague testimony at the fact-finding hearing concerning plans for his child's future and failed to articulate any meaningful measures he had taken to make future reunification a reality. Given respondent's lack of cooperation, we need not address whether petitioner engaged in diligent efforts to strengthen the parent-child relationship (*see Matter of Yvonne N.*, 6 AD3d at 770; *compare Matter of Shi'ann FF.*, 47 AD3d at 1134-1135). Under the circumstances presented, we find that Family Court properly adjudicated the child to be permanently neglected and terminated respondent's parental rights.

Peters, J.P., Rose, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, without costs.