■ In the Matter of ANASTASIA FF. and Another, Children Alleged to be Permanently Neglected. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; RALPH AA., Appellant. [888 NYS2d 624]—

Kavanagh, J. Appeal from an order of the Family Court of Broome County (Charnetsky, J.), entered January 12, 2008, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Anastasia FF. and Ralph FF. to be permanently neglected children, and terminated respondent's parental rights.

In September 2005, petitioner filed a petition alleging that respondent neglected his child (born in 2005), and Family Court issued an order directing the child's temporary removal and placement in petitioner's custody.[1] The child was subsequently adjudicated a neglected child and her placement with petitioner was continued. Meanwhile, respondent was placed under the supervision of petitioner and was required to actively participate in mental health evaluations and partake in other services as recommended and provided by petitioner. In 2006, while this process was ongoing, respondent and the child's mother had a son who was voluntarily placed with petitioner immediately after his birth.

In February 2008, petitioner filed a permanent neglect petition alleging that, despite its diligent efforts, respondent continued to demonstrate that he was unable or unwilling to plan for his children's future despite being physically and

---

**1.** The neglect petition also named the child's mother as a respondent. The mother eventually consented to an order terminating her parental rights.

financially able to do so (*see* Social Services Law § 384-b [7] [a]). Based on evidence introduced during the fact-finding and dispositional hearings, Family Court found that the children were permanently neglected, concluded that it was in their best interests that respondent's parental rights be terminated and ordered that the children be freed for adoption. Respondent now appeals.

Respondent claims that petitioner did not make diligent efforts to encourage and strengthen his relationship with the children (*see* Social Services Law § 384-b [7] [a]; *Matter of Jasper QQ.*, 64 AD3d 1017, 1020 [2009], *lv denied* 13 NY3d 706 [2009]; *Matter of Laelani B.*, 59 AD3d 880, 881 [2009]) and, in that regard, points to the fact that while he was incarcerated, petitioner made no arrangement for the children to visit with him. Initially, we note the obvious—such visits are not required, particularly where the children are very young and trips to a penal institution would not be in their best interests (*see* Social Services Law § 384-b [7] [f] [5]; *compare Matter of Gerald BB.*, 51 AD3d 1081 [2008], *lv denied* 11 NY3d 703 [2008]). In addition, petitioner's caseworker provided respondent with updates as to the children's progress and condition during periodic visits with him while he was incarcerated and arranged for him to have weekly visits with the children. It also sought to provide him with counseling and enrolled respondent in the Family and Children's Domestic Violence Batterer's Group. By providing these services, petitioner established, by clear and convincing evidence, that it "made relevant and meaningful efforts to assist respondent in resolving the circumstances that led to the removal of the children in order to reunite the family" (*Matter of Eric G.*, 59 AD3d 785, 786 [2009]; *see Matter of Alaina E.*, 59 AD3d 882, 884-885 [2009], *lv denied* 12 NY3d 710 [2009]; *Matter of Isaiah F.*, 55 AD3d 1004, 1004 [2008]).

We also note that, during his most recent incarceration, respondent failed to successfully complete programming designed to address his propensity for violence, which was deemed vital to him becoming a proper parent for his children. Under the circumstances, respondent's persistent "failure to correct the conditions that led to the removal of the child[ren]" amounts to a "failure to plan for the child[ren's] future" (*Matter of Destiny CC.*, 40 AD3d 1167, 1169 [2007] [internal quotation marks and citations omitted]) which, in turn, supports Family Court's finding that petitioner established by clear and convincing evidence that respondent permanently neglected his children (*see Matter of Kaytlin TT.*, 61 AD3d 1085, 1087 [2009]; *Matter of Alaina E.*, 59 AD3d at 886; *Matter of Laelani B.*, 59 AD3d at 882).

Finally, respondent claims that Family Court should have

suspended its judgment terminating his parental rights and provided him with another opportunity to demonstrate his willingness, as well as his ability, to properly care for his children. While a suspended judgment is a possible alternative to the termination of parental rights, it will only be adopted if it has been shown to be in the child's best interests and where the parent, under the facts presented, has clearly demonstrated that they deserve another opportunity to show that they have " 'the ability to be a fit parent' " (*Matter of Isaiah F.*, 55 AD3d at 1006, quoting *Matter of Angela LL.*, 287 AD2d 823, 824 [2001]; *see* Family Ct Act § 631 [b]). Here, respondent has not only been incarcerated for much of the time his children have been placed with petitioner, but he has failed to responsibly address the issues that led to their removal and their placement in foster care.[2] As a result, Family Court had a sound and substantial basis for its decision not to suspend its judgment and that termination of respondent's parental rights was in the children's best interests (*see Matter of Laelani B.*, 59 AD3d at 882; *Matter of Angelica VV.*, 53 AD3d 732, 733-734 [2008]; *Matter of Raine QQ.*, 51 AD3d 1106, 1106 [2008], *lv denied* 10 NY3d 717 [2008]).

Mercure, J.P., Spain, Malone Jr. and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.

___

**2.** One of these periods of imprisonment was as the result of respondent stabbing the children's mother with a knife.