Matter of Corey MM. (Cassandra LL) (2019 NY Slip Op 08460)





Matter of Corey MM. (Cassandra LL)


2019 NY Slip Op 08460


Decided on November 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2019

527035

[*1]In the Matter of Corey MM., Alleged to be a Permanently Neglected Child. Chemung County Department of Social Services, Respondent; Cassandra LL., Appellant, et al., Respondent.

Calendar Date: October 9, 2019

Before: Garry, P.J., Mulvey, Devine and Aarons, JJ.


Lisa K. Miller, McGraw, for appellant.
Chemung County Department of Social Services, Elmira (Damian M. Sonsire of counsel), for Chemung County Department of Social Services, respondent.
Alena E. Van Tull, Binghamton, attorney for the child.



Garry, P.J.
Appeal from an order of the Family Court of Chemung County (Baker, J.), entered January 12, 2018, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent Cassandra LL.'s parental rights.
Respondent Cassandra LL. (hereinafter the mother) and respondent Corey NN. (hereinafter the father) are the parents of a child (born in 2014). The child was placed in petitioner's custody in 2015 at the age of 9½ months, due in part to the mother's substance abuse and domestic violence issues. The mother and the father consented to findings of neglect in 2016. In December 2016, Family Court issued a warrant for the mother's arrest after she failed to attend a scheduled appearance in the neglect proceeding. Petitioner then commenced this proceeding against the mother and the father seeking adjudications of permanent neglect and termination of their parental rights. In February 2017, the mother was returned on the warrant; an initial appearance was held in the permanent neglect proceeding, and the mother entered a general denial. She thereafter failed to attend an appearance in March 2017. She was present at the next appearance in May 2017, but again failed to appear in July 2017 for the scheduled trial.[FN1] The court denied counsel's request for adjournment, found the mother in default, and determined that she had permanently neglected the child. In August 2017, the mother appeared and testified at the dispositional hearing. The court thereafter terminated her parental rights. The mother appeals.
Initially, we find that the mother is precluded from raising claims in this appeal that arise from the adjudication of permanent neglect. Although an appeal from a dispositional order in a permanent neglect proceeding would ordinarily bring up the fact-finding order for review, no appeal lies from an order entered upon default (see CPLR 5511; Matter of Melijah NN. [Russell NN.], 150 AD3d 1348, 1349 n 2 [2017]; Matter of Adele T. [Kassandra T.], 143 AD3d 1202, 1203 [2016]). The appropriate procedure for such a challenge is "to move to vacate the default and, if necessary, appeal from the denial of that motion" (Matter of Madison P. [Kaitlin R.], 151 AD3d 1300, 1302 [2017] [internal quotation marks and citations omitted]; see Matter of Deshane v Deshane, 123 AD3d 1243, 1244 [2014], lv denied 25 NY3d 901 [2015]). Here, the mother did not do so.
As the mother argues, " a party's failure to appear does not automatically result in a default — particularly where counsel appears upon the absent party's behalf and offers an explanation for his or her failure to attend" (Matter of Derek P. v Doris Q., 92 AD3d 1103, 1105 [2012] [internal quotation marks and citations omitted], lv dismissed and denied, 19 NY3d 831 [2012]). However, despite the presence of the mother's counsel at the March 2017 appearance, we find no error in Family Court's determination that the mother was in default. At the February 2017 appearance, petitioner's counsel stated that the mother had previously failed to attend four other appearances in the neglect proceeding, and that her most recent prior court appearance, in October 2016, had taken place pursuant to a warrant after a failure to appear. The mother received Parker admonishments at the February 2017 appearance, was specifically warned that she could be held in default if she did not attend future appearances, and confirmed her full understanding of this warning. She nevertheless failed to attend the next appearance in March 2017. On that occasion, the court accepted her counsel's explanation that the mother was in a drug treatment program in California and, instead of entering a default, accommodated the mother by setting the matter down for a conference and a May 2017 appearance for an account of her progress.
Having left the California program, the mother appeared with her counsel at the May 2017 appearance, where Family Court set the July 2017 trial date. Although the mother was thus fully aware of the trial date, she nevertheless elected to leave the state to re-enroll in the California program. She gave no advance notice of this plan so that a timely request for an adjournment could have been made; instead, she left last-minute voicemails for her counsel and petitioner's counsel on the weekend immediately before the trial, scheduled to commence on a Monday. In view of the mother's history of previous failures to appear, the Parker warnings she had received, the accommodation that the court had granted to her after her previous absence in March 2017, and her undisputed knowledge of the July 2017 trial date, we find that the default was properly entered. Thus, the mother may not challenge the permanent neglect determination (see Matter of Adele T. [Kassandra T.], 143 AD3d at 1203-1204; Matter of Semonae YY., 239 AD2d 716, 716-717 [1997]; see also Matter of Deshane v Deshane, 123 AD3d at 1244).[FN2]
We reject the mother's contention that she was deprived of the effective assistance of counsel by her counsel's failure to move to vacate the default. Such a motion would have required counsel to demonstrate "a reasonable excuse for [the mother's] default and a potentially meritorious defense" (Matter of Myasia QQ. [Mahalia QQ.], 133 AD3d 1055, 1056 [2015]; see CPLR 5015 [a] [1]). Family Court had rejected the only excuse the mother provided for her absence, and nothing in the record indicates that counsel would have been able to establish these grounds. "[C]ounsel cannot be faulted for failing to make a motion that has little or no chance of success" (Matter of Ritter v Moll, 148 AD3d 1427, 1429 [2017] [internal quotation marks and citations omitted]; see Matter of Donald G. v Hope H., 160 AD3d 1061, 1065 [2018]). The mother's counsel attempted — albeit unsuccessfully — to forestall the default by requesting an adjournment for a telephonic appearance. When that effort failed, counsel could reasonably have made the strategic determination that a motion to vacate the default would be futile and that the procedure that would best protect the mother's interests would be to secure her attendance at future appearances. Our review of the record as a whole reveals that the mother's counsel advocated zealously and effectively for her throughout the proceedings and that she received meaningful representation (see Matter of Ritter v Moll, 148 AD3d at 1430; Matter of Shay-Nah FF. [Theresa GG.], 106 AD3d 1398, 1401-1402 [2013], lv denied 21 NY3d 863 [2013]).
Finally, Family Court did not err in denying the mother's request for a suspended judgment (see Family Ct Act §§ 631 [b]; 633). "Following an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child and there is no presumption that any particular disposition, including the return of a child to a parent, promotes such interests" (Matter of Angelica VV., 53 AD3d 732, 733 [2008] [citations omitted]; accord Matter of Johanna M. [John L.], 103 AD3d 949, 951 [2013], lv denied 21 NY3d 855 [2013]). A suspended judgment may be granted when a court "finds that it would be in the child's best interests to give the parent a brief grace period in which to demonstrate his or her fitness to care for the child and improve parenting skills" (Matter of Carter A. [Courtney QQ.], 121 AD3d 1217, 1220 [2014]). However, the remedy is appropriate only when "the parent, under the facts presented, has clearly demonstrated that [he or she] deserve[s] another opportunity to show that [he or she] ha[s] the ability to be a fit parent" (Matter of Anastasia FF., 66 AD3d 1185, 1187 [2009] [internal quotation marks and citations omitted], lv denied 13 NY3d 716 [2010]; accord Matter of Illion RR. [Rachael SS.], 154 AD3d 1126, 1128 [2017], lv denied 30 NY3d 908 [2018]). We agree with the attorney for the child that the mother did not make that showing here.
At the dispositional hearing, petitioner's caseworker testified that a developmental-behavioral pediatrician had conducted an evaluation of the child's special medical, behavioral and emotional needs and had concluded that the child "need[ed] a loving, nurturing, consistent, structured, and safe home environment, free from the threat of violence." The caseworker testified that, based on her experience working with the mother and given the mother's instability, current need for drug treatment, history of sporadic visits with the child and other issues, the caseworker did not believe the mother was capable of providing such a home. The caseworker testified that the child's foster parents were not an adoptive resource but that potential adoptive parents had been identified, and that the child had been visiting with them for several months. According to the caseworker, the potential adoptive parents were certified foster parents with "[a] very loving, nurturing home" who were aware of the child's special needs and able to provide for them.
The mother's testimony established that, to her credit, she was successfully participating in the drug treatment program at the time of the dispositional hearing. She stated that she planned to complete her treatment and then enroll in what she described as a sober living program. However, she also acknowledged having relapsed after her first, relatively brief stay in the program, and she did not know how long she would have to remain in treatment. She stated that this would depend on the recommendations of her treatment providers and could be as much as six months. She further stated that she did not intend to return to New York thereafter, and wished to remain in California.
Family Court noted its concern that the mother had elected to travel to California for drug treatment rather than to remain close to the child and engage in the local programming that petitioner had recommended.[FN3] The court further noted that the mother had not offered evidence of the steps she intended to take to plan for the child's return in California, such as looking into parenting programs or housing and employment opportunities. She further provided no plan for visiting with the child while she remained in California. Given these concerns, the court stated that it was not persuaded that the mother had a true desire to regain custody of the child — a credibility assessment to which this Court defers (see e.g. Matter of Bayley W. [Patrick K.], 146 AD3d 1097, 1099 [2017], lv denied 29 NY3d 907 [2017]). We further note the mother's delay in obtaining treatment for 18 months following the child's placement in foster care — more than half of his life — and her failure to visit the child consistently during this period. The mother's continuation in the California program, even if ultimately successful, would further disrupt her visitation with the child and prolong his stay in foster care for an unknown time period. Accordingly, we find no abuse of discretion in the court's determination that a suspended judgment would not be in the child's best interests, and that the mother's parental rights should be terminated (see Matter of Angelina BB. [Miguel BB.], 90 AD3d 1196, 1198 [2011]; Matter of Shania D. [Peggy E.], 82 AD3d 1513, 1513-1514 [2011]).
Mulvey, Devine and Aarons, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: At the July 2017 appearance, the father contested to a finding of permanent neglect with a one-year suspended judgment.

Footnote 2: The mother's argument that Family Court should have conducted an inquest is unpreserved, as it was raised for the first time upon this appeal. In any event, this assertion is precluded by her failure to move to vacate the default judgment. Further, our conclusion is not altered by the subsequent discovery that, at some unspecified time, Family Court apparently gave the mother an incorrect telephone number for her counsel. Significantly, the mother did not claim that this error prevented her from communicating with her counsel before the July 2017 appearance, and we note that she was apparently able to reach her counsel without difficulty when she transmitted the voicemail message just before the trial.

Footnote 3: The mother stated that she chose the California program because it was the first residential program she found with an opening and because she thought she would benefit from a change in geography.