Matter of Jason O. (Stephanie O.) (2020 NY Slip Op 06985)





Matter of Jason O. (Stephanie O.)


2020 NY Slip Op 06985


Decided on November 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 25, 2020

528066

[*1]In the Matter of Jason O., Alleged to be a Permanently Neglected Child. Washington County Department of Social Services, Respondent; Stephanie O., Appellant. (And Another Related Proceeding.)

Calendar Date: October 22, 2020

Before: Garry, P.J., Clark, Devine, Aarons and Reynolds Fitzgerald, JJ.


Alexandra J. Buckley, Clifton Park, for appellant.
Roger A. Wickes, County Attorney, Fort Edward (Daniel S. Martindale of counsel), for respondent.
Rose T. Place, Glens Falls, attorney for the child.



Clark, J.
Appeals from a decision and an order of the Family Court of Washington County (Michelini, J.), entered September 20, 2018 and November 14, 2018, which, among other things, granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
Respondent is the mother of a son (born in 2016), who has been in foster care since he was nearly two weeks old. In March 2017, upon respondent's admission that she failed to maintain a safe, stable and adequate home for the child, Family Court adjudicated the child to have been neglected, continued the child's placement with petitioner and entered an order of supervision requiring respondent to, among other things, obtain and maintain safe, stable and sanitary housing and participate in mental health counseling and other support services. In November 2017, after the child had been in petitioner's care for over 15 months, petitioner commenced the instant permanent neglect proceeding based upon respondent's failure to substantially plan for the child's future. Following a fact-finding hearing and a dispositional hearing, Family Court adjudicated the child to have been permanently neglected by respondent,[FN1] terminated respondent's parental rights and transferred guardianship and custody of the child to petitioner.[FN2] Respondent appeals, challenging the permanent neglect finding and the termination of her parental rights.[FN3]
As relevant here, a permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for at least one year after the child came into the agency's care, to substantially and continuously or repeatedly "plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]). As a threshold matter, the agency must prove — by clear and convincing evidence — that it made diligent efforts to encourage and strengthen the parent's relationship with the child (see Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1078 [2018]; Matter of Paige J. [Jeffrey K.], 155 AD3d 1470, 1472 [2017]). Diligent efforts will be found when [*2]the agency makes "practical and reasonable efforts to ameliorate the problems preventing reunification and [to] strengthen the family relationship" through means such as
"assisting the parent with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Carter A. [Courtney QQ.], 121 AD3d 1217, 1218 [2014]; accord Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1002-1003 [2017]).
As reflected by the record, the child was removed from respondent's care due to concerns regarding respondent's lack of housing at the time of the child's birth and respondent's ability to identify and meet the child's needs given respondent's perceived mental health issues and cognitive limitations. With respect to respondent's housing situation, the evidence demonstrated that petitioner's caseworker helped respondent secure temporary housing at a hotel, met regularly with respondent regarding her living situation, arranged for petitioner to act as respondent's representative payee so that respondent could access her Social Security income and referred respondent to a financial management class. The caseworker testified that, given concerns about respondent's ability to understand the material presented at the financial management class, arrangements were made to provide respondent with one-on-one instruction.
Additionally, upon petitioner's referral, respondent underwent a psychological assessment in September 2016 to determine respondent's "level of intellectual and adaptive functioning" and "whether she [could] care for [the] child independently." This assessment revealed that respondent's cognitive functioning falls "within the low range of borderline intellectual functioning," but that she is expected to have "the cognitive ability to parent [the] child with support." The assessment report indicated that respondent needs support services to assist her in parenting adequately and safely, would benefit from mental health counseling and requires regular repetition and review of parenting skills to learn and maintain those skills.
Consistent with the findings and recommendations of the psychological assessment, petitioner facilitated respondent's supervised visits with the child several times a week. During those visits, respondent was coached on various parenting skills, such as making bottles, feeding the child and changing diapers and outfits. The evidence also demonstrated that petitioner referred respondent to a parenting class and that the caseworker assisted respondent with organizational skills, including tracking visits and appointments in a calendar. Further, petitioner's caseworker testified that, to address respondent's mental health concerns, she coordinated with Hudson Headwaters Care Management Services and the Association of Mental Health and was able to facilitate respondent's admission to outpatient services at Glens Falls Hospital. Petitioner provided respondent with transportation to and from her visits with the child, as well as various other appointments and services.
Testimony from the caseworker, as well as a family specialist at Berkshire Farms, revealed that petitioner's ability to work with respondent was significantly hampered in May 2017, when respondent [*3]moved to Florida without notice. The caseworker stated that, notwithstanding the difficulties posed by the move, petitioner attempted to assist respondent in obtaining mental health treatment in Florida, coordinated virtual visits between respondent and the child and provided respondent with tips and suggestions to engage the child during those virtual visits. Upon consideration of all of the foregoing, we agree with Family Court that petitioner established, by clear and convincing evidence, that it made diligent efforts to ameliorate the concerns that led to the child's removal and to strengthen the parent-child relationship (see Matter of Keadden W. [Hope Y.], 165 AD3d 1506, 1507-1508 [2018], lv denied 32 NY3d 914 [2019]; Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1178-1179 [2017]; Matter of Cory N. [Jessica O.], 111 AD3d 1079, 1080 [2013]).
As petitioner met its threshold burden of establishing diligent efforts, we now turn to whether petitioner demonstrated, through clear and convincing evidence, that respondent failed to substantially plan for the future of the child for the requisite period of time (see Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d at 1078; Matter of Landon U. [Amanda U.], 132 AD3d 1081, 1084 [2015]). To substantially plan for the child's future, a parent must take meaningful steps to correct the conditions that led to the child's removal (see Matter of Paige J. [Jeffrey K.], 155 AD3d at 1474; Matter of Alexander Z. [Jimmy Z.], 149 AD3d at 1179).
The evidence established that, between the child's removal in July 2016 and respondent's move to Florida in May 2017, respondent failed to secure and maintain stable housing. Indeed, the testimony demonstrated that respondent's conduct resulted in her losing housing that petitioner had secured for her in New York and that she thereafter bounced from one address to another. Although respondent maintained a stable address once she moved to Florida, the record reflects that respondent was living with the child's maternal grandparents and that there were ongoing sanitation and safety concerns regarding the suitability of the home. As for respondent's mental health issues, respondent was discharged from outpatient services at the Glens Falls Hospital in January 2017 due to respondent's lack of attendance and refusal to engage in the appointments that she did attend. The evidence reflects that respondent's failure to sign releases thwarted subsequent efforts to obtain alternate mental health treatment and that she did not reengage in mental health counseling until September 2017, over 13 months after the child's removal.
With respect to respondent's ability to identify and meet the child's needs, the evidence demonstrated that respondent completed a parenting class on her second try, attended most of the child's medical appointments and was making some progress in learning parenting skills during her coached visits with the child in New York. However, as established by the evidence, respondent failed to consistently demonstrate basic parenting skills without assistance or intervention; respondent would miss or cancel visits with the child, which caused her progress to regress. Further, any progress made by respondent came to a halt when she voluntarily moved to Florida. Following that move, respondent's contact with the child was limited to weekly virtual visits, which respondent did not consistently attend or would end early, or would fail to engage in meaningfully. Ultimately, the evidence demonstrated that respondent did not take meaningful steps to address and remedy the concerns that led to the child's removal. As such, there is a sound and substantial basis in the record to [*4]support Family Court's determination that, despite petitioner's diligent efforts, respondent failed to substantially plan for the child's future for a period of at least one year (see Social Services Law § 384-b [7] [c]; Matter of Alexander Z. [Jimmy Z.], 149 AD3d at 1179-1180). There is thus no basis upon which to disturb Family Court's finding of permanent neglect.
Respondent further challenges Family Court's determination to terminate her parental rights and commit guardianship and custody of the child to petitioner.[FN4] "Following an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child and there is no presumption that any particular disposition, including the return of a child to a parent, promotes such interests" (Matter of Angelica VV., 53 AD3d 732, 733 [2008] [citations omitted]; see Matter of Michael B., 80 NY2d 299, 312 [1992]; Matter of Jahvani Z. [Thomas V.—Mariah Z.], 168 AD3d 1146, 1151 [2019], lv denied 33 NY3d 902 [2019]). Where appropriate, Family Court may issue a suspended judgment to afford the parent a finite period of time within which to become a fit parent with whom the child can be safely reunited (see Family Ct Act § 633; Matter of Isabella M. [Kristine N.], 168 AD3d 1234, 1235 [2019]; Matter of Jahvani Z. [Thomas V.—Mariah Z.], 168 AD3d at 1151). However, a suspended judgment is warranted only when "the parent, under the facts presented, has clearly demonstrated that [he or she] deserve[s] another opportunity to show that [he or she] ha[s] the ability to be a fit parent" (Matter of Anastasia FF., 66 AD3d 1185, 1187 [2009] [internal quotation marks and citations omitted], lv denied 13 NY3d 716 [2010]; accord Matter of Corey MM. [Cassandra LL.], 177 AD3d 1119, 1122 [2019]).
The evidence presented at the dispositional hearing demonstrated that, although respondent has completed a parenting class and is engaging in mental health counseling in Florida, concerns remain over respondent's living situation, mental health status and ability to meet the child's needs. Significantly, the evidence demonstrated that respondent gave birth to a second child in Florida, that such child was removed from her care and that the home of the maternal grandparents — where respondent continued to reside at the time of the dispositional hearing — was not suitable. Indeed, a home study conducted as part of the ongoing proceedings in Florida revealed sanitation and safety concerns in respondent's home. Additionally, the evidence reflected that respondent has had very few in-person visits with the child since her move to Florida in May 2017 and, given her inconsistent and less-than-meaningful virtual visits with the child, has been unable to develop and maintain a bond with the child. In contrast, testimony from petitioner's caseworker, as well as the child's foster mother, demonstrated that the child has been in the care of his foster parents since he was less than two weeks old, has bonded with the foster parents and is thriving. The evidence established that the foster parents are an adoptive resource. According deference to Family Court's credibility assessments and mindful of the length of time in which the child has remained in foster care, we find that a sound and substantial basis exists to support Family Court's determination to terminate respondent's parental rights (see Matter of Keadden W. [Hope Y.], 165 AD3d at 1509; Matter of Cory N. [Jessica O.], 111 AD3d at 1082-1083).
Garry, P.J., Devine, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the appeal from the decision entered September 20, 2018 is dismissed, without costs.
ORDERED that the order entered November 14, 2018 is affirmed, without costs.



Footnotes

Footnote 1: During the pendency of the fact-finding hearing, the child's biological father judicially surrendered his parental rights.

Footnote 2: In August 2017, respondent filed a petition seeking to terminate the child's placement with petitioner. Family Court dismissed this petition in the November 2017 dispositional order. Respondent expressly states on appeal that she is not challenging the dismissal of her petition.

Footnote 3: We dismiss respondent's appeal from the September 2018 decision finding permanent neglect, inasmuch as an appeal does not lie from a decision (see Family Ct Act § 1112 [a]; CPLR 5512 [a]). Nevertheless, Family Court's permanent neglect finding is brought up for review by respondent's appeal from the November 2018 dispositional order (see Matter of Isabella H. [Richard I.], 174 AD3d 977, 978 n 2 [2019]; Matter of Alysheionna HH. [Tara II.], 101 AD3d 1413, 1414 n 2 [2012], lv denied 20 NY3d 861 [2013]).

Footnote 4: The attorney for the child supports Family Court's determination to terminate respondent's parental rights.