■ In the Matter of LAELANI B. and Another, Children Alleged to be Permanently Neglected. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; DAWN C. et al., Appellants. [873 NYS2d 378]—

Peters, J. Appeal from an order of the Family Court of Columbia County (Nichols, J.), entered December 17, 2007, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondents' children to be permanently neglected, and terminated respondents' parental rights.

Respondents are the parents of Laelani B. (born in 2003) and Sasha B. (born in 2004). In December 2005, petitioner removed the children and placed them in a foster care home, where they have remained. After a hearing, Family Court determined that the children had been neglected. Pursuant to a service plan established to strengthen the parent-child relationships, respondents agreed to, among other things, obtain substance abuse treatment and the mother agreed to attend mental health and domestic violence counseling. In June 2007, petitioner commenced this permanent neglect proceeding against respondents and, after a fact-finding and dispositional hearing, Family Court adjudged that respondents had permanently neglected the chil-

dren and terminated their parental rights. Respondents appeal and we affirm.

Family Court properly determined that respondents permanently neglected their children (*see* Social Services Law § 384-b [3] [g]; [4] [d]; [7]). In a permanent neglect proceeding, the threshold inquiry is whether petitioner made diligent efforts to encourage and strengthen the parent-child relationship (*see* Social Services Law § 384-b [7] [a]; *see also Matter of Melissa DD.*, 45 AD3d 1219, 1220 [2007], *lv denied* 10 NY3d 701 [2008]; *Matter of Destiny CC.*, 40 AD3d 1167, 1168 [2007]; *Matter of Thomas JJ.*, 20 AD3d 708, 709 [2005]). Here, petitioner established by clear and convincing evidence that it had made such diligent efforts. Respondents were provided with a caseworker who referred them for numerous services, including substance abuse counseling and parenting, domestic violence and anger management classes. Petitioner's staff remained in regular contact with service providers, repeatedly rescheduled respondents' numerous missed appointments, arranged transportation, and followed up with both treatment providers and respondents. Respondents also received assistance with housing, rent, food vouchers, transportation and weekly supervised visitation, including visitation while the mother was incarcerated in 2006 after her unsuccessful discharge from drug treatment.

Additionally, Columbia County Mental Health provided the mother with mental health counseling, yet she missed more than one half of the scheduled biweekly sessions between October 2006 and November 2007. Service plan reviews were held at which respondents were reminded of the imperative that they timely address the reasons for the removal of the children by completing, among other things, substance abuse evaluations and treatment. During the relevant time, the children were provided with services to address their medical, special educational and therapeutic needs. We find that the evidence presented at the fact-finding hearing proved that petitioner made "affirmative, repeated and meaningful efforts to restore the parent-child relationship" (*Matter of Alycia P.*, 24 AD3d 1119, 1120 [2005]; *see Matter of Isaiah F.*, 55 AD3d 1004, 1005 [2008]; *Matter of Thomas JJ.*, 20 AD3d at 710).

With petitioner having demonstrated that it made the requisite diligent efforts, it was respondents' obligation to show that the conditions that led to the children's removal had been addressed and that they had a meaningful plan for the children's future (*see Matter of Isaiah F.*, 55 AD3d at 1005; *Matter of James X.*, 37 AD3d 1003, 1006 [2007]). To their credit, respondents

remained employed, exercised most scheduled visitations, and completed some of the programs offered. Yet neither parent addressed his or her fundamental underlying substance abuse problem, and the mother never adequately addressed her mental health needs. Thus, we reject respondents' contention that Family Court erred in finding that they failed to plan for the future of their children, although physically and financially able to do so (*see* Social Services Law § 384-b [7] [a]).

Nor did Family Court abuse its discretion in terminating respondents' parental rights and declining to grant a suspended judgment in its dispositional order. We accord great deference to the court's determination, given its ability to assess the demeanor and credibility of witnesses, and find ample record support for its dispositive conclusion that it was not in the best interests of the children to suspend judgment to give respondents yet another chance to demonstrate their parental fitness and to plan for the future of the children (*see Matter of Isaiah F.*, 55 AD3d at 1006; *Matter of Melissa DD.*, 45 AD3d at 1221; *Matter of Joshua BB.*, 27 AD3d 867, 869 [2006]; *see also* Family Ct Act § 631 [b]; *Matter of Michael B.*, 80 NY2d 299, 311 [1992]). At the dispositional hearing, held nearly two years after the removal of the children, neither respondent had completed substance abuse treatment and, given respondents' persistent unwillingness to meaningfully engage in such services even in the face of a termination proceeding, there was no reason to believe that they would do so during any "brief grace period" (*Matter of Michael B.*, 80 NY2d at 311).

Finally, given the less stringent standard governing the admission of evidence at a dispositional hearing (*see Matter of Chelsea K.*, 15 AD3d 794, 794-795 [2005], *lv dismissed* 4 NY3d 869 [2005]; *compare* Family Ct Act § 1046 [b] [ii] *with* Family Ct Act § 1046 [c]), we are not persuaded that the admission of the psychologist's report, over the mother's hearsay objection, constituted error.

Cardona, P.J., Kavanagh and Stein, JJ., concur. Ordered that the order is affirmed, without costs.