■ In the Matter of VICTORIOUS LL., a Child Alleged to be Permanently Neglected. ULSTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JONATHAN LL., Appellant. [916 NYS2d 342]—

Mercure, J.P. Appeal from an order of the Family Court of Ulster County (Mizel, J.), entered July 27, 2009, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Victorious LL. to be a permanently neglected child, and terminated respondent's parental rights.

Respondent is the father of Victorious LL., who was born in 2007. As stated in our prior decision in this matter, the child has been in petitioner's custody since shortly after his birth, and his mother has surrendered her parental rights (*Matter of Victorious LL. [Jonathan LL.]*, 74 AD3d 1591 [2010]). Respon-

---

dent lacked stable housing at the time of the child's birth, and he was incarcerated shortly thereafter in connection with a petit larceny charge. Upon his release from jail approximately one month later, he received two of his weekly scheduled visits with the child, but then was incarcerated for an additional two months after pleading guilty to a charge of aggravated harassment arising out of an altercation with the mother and her new boyfriend. Respondent was released again in July 2007, and he entered a residential substance abuse treatment program where he had weekly visitation with the child.

During the period that respondent was participating in the rehabilitation program, Family Court adjourned the neglect petition in contemplation of dismissal. Among the conditions ordered were respondent's participation in a substance abuse rehabilitation program and his refraining from the possession or consumption of alcohol or drugs. Nevertheless, respondent was discharged from his rehabilitation program in December 2007, after he left the program without authorization. Respondent thereafter violated an order of protection in favor of the mother, and was ultimately sentenced to eight months in jail upon his plea of guilty to criminal contempt. In May 2008, while respondent was still incarcerated, petitioner commenced this permanent neglect proceeding. Following a fact-finding hearing, Family Court found that respondent permanently neglected the child. A dispositional hearing was then held, after which Family Court terminated respondent's parental rights. Respondent appeals, and we now affirm.

A petitioner seeking to terminate a parent's rights on the ground of permanent neglect must demonstrate by clear and convincing evidence that the parent "failed to maintain contact with or plan for the future of [the] child for a period of one year after the child came into the custody of an authorized agency notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (*Matter of Star Leslie W.,* 63 NY2d 136, 140 [1984]; *see* Social Services Law § 384-b [7] [a]; *Matter of George M.,* 48 AD3d 926, 927 [2008]). The threshold inquiry is whether the petitioner met its duty to exercise "diligent efforts to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]; *see Matter of Star Leslie W.,* 63 NY2d at 142; *Matter of Laelani B.,* 59 AD3d 880, 881 [2009]). Here, respondent states in his brief that, with the exception of 15 days, he was either in an inpatient facility or incarcerated for the entirety of the relevant time period. Despite this, petitioner established a plan for reunification between the child and respondent that emphasized respondent's

need to complete substance abuse treatment, supervised numerous visitations between respondent and the child, provided transportation to visitation from respondent's chosen residential treatment program, arranged for respondent's participation in two service plan reviews, supplied respondent with photographs and frequent updates on the child's health and development, and provided temporary housing for respondent during the brief periods in which he was not residing in a facility.

As petitioner asserts, respondent's frequent incarceration rendered the provision of additional services impractical (*see* Social Services Law § 384-b [7] [f] [3], [5]). Furthermore, the record does not support respondent's argument that the foster parents thwarted his attempts to establish a relationship with the child such that petitioner breached its duty by continuing placement with them (*cf. Matter of Leon RR*, 48 NY2d 117, 126 [1979]). Rather, in our view, petitioner proved by clear and convincing evidence that it "made affirmative, repeated and meaningful efforts to restore the parent-child relationship," thereby meeting its duty to exercise diligent efforts (*Matter of Laelani B.*, 59 AD3d at 881 [internal quotation marks and citation omitted]; *see Matter of George M.*, 48 AD3d at 928; *Matter of Amanda TT.*, 23 AD3d 955, 956 [2005], *lv denied* 7 NY3d 703 [2006]; *Matter of Shane I.*, 300 AD2d 709, 710 [2002]; *cf. Matter of Shi'ann FF.*, 47 AD3d 1133, 1134-1135 [2008]).

Notwithstanding petitioner's efforts, respondent failed to complete substance abuse treatment, voluntarily left his treatment program to locate the child's mother in violation of an order of protection and continued to engage in confrontations with the mother, leading to his repeated incarceration. In addition, although petitioner has advised respondent of the child's special needs resulting from the mother's substance abuse during pregnancy, respondent failed to gain insight into those needs.* Under these circumstances, we cannot say that Family Court erred in concluding that respondent permanently neglected the child by failing to realistically plan for his future (*see Matter of Laelani B.*, 59 AD3d at 881-882; *Matter of Nahia M.*, 39 AD3d 918, 920-921 [2007]; *Matter of Brandon OO.*, 304 AD2d 873, 874 [2003]). Finally, given the foregoing and the evidence of respondent's failed drug tests and unsuccessful discharge from another treatment program after the fact-finding hearing, we conclude that Family Court properly determined that a suspended judgment would not be in the child's best

---

* We note that, in his brief, respondent claims that the foster parents sought to have the child classified as having special needs because "[f]oster parents are generally paid more to care for a special needs child."

interests (*see Matter of Arianna OO.*, 29 AD3d 1117, 1117-1118 [2006]; *Matter of Joshua BB.*, 27 AD3d 867, 869 [2006]; *Matter of Thelonius BB.*, 299 AD2d 775, 776-777 [2002]).

Rose, Lahtinen, Malone Jr. and Stein, JJ., concur. Ordered that the order is affirmed, without costs.