■ In the Matter of JONATHAN NN., a Child Alleged to be Permanently Neglected. CHEMUNG COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MICHELLE OO., Appellant. (And Another Related Proceeding.) [934 NYS2d 568]—

Garry, J.

In December 2007, respondent consented to a safety plan implemented by petitioner, providing that her child (born in 2006) would reside with a friend. Thereafter, petitioner commenced a proceeding seeking an adjudication of neglect and the child's removal from respondent. In May 2008, upon respondent's consent to a finding of neglect, Family Court ordered the child to be placed in the friend's custody pursuant to Family Ct Act article 10 and imposed terms and conditions upon respondent. The child was placed in foster care in October 2008 when the friend became unable to care for him. Petitioner commenced this permanent neglect proceeding in July 2009.

Respondent moved to dismiss the original petition as facially insufficient in that it did not allege that the child had been in petitioner's care for one year (*see* Family Ct Act § 614 [1] [d]; Social Services Law § 384-b [7] [a]). Petitioner then filed an amended petition (hereinafter the first amended petition) alleging that the child had been in "Article 10 custody" since May 2008. After the fact-finding hearing began, respondent sought dismissal of the first amended petition on the ground that the child had not been in petitioner's care for the statutory period. In November 2009, while this motion was pending, the parties stipulated to the filing of a second amended petition, and Family Court dismissed the first amended petition as superseded. Following completion of the fact-finding hearing, Family Court found the child to be permanently neglected. The parties stipulated to the imposition of a four-month suspended judgment subject to the May 2008 terms and conditions. Petitioner thereafter sought revocation of the suspended judgment. Following a hearing, the court granted the application and terminated respondent's parental rights. Respondent appeals from the order adjudicating the child to be permanently neglected and from the order terminating her parental rights.

Respondent first contends that Family Court erred in failing to dismiss the original petition as facially insufficient. However, as the deficiency was promptly corrected by the first amended petition, dismissal was not required (*see* CPLR 3025 [a]). Respondent next contends that the first amended petition should

have been dismissed as premature and the fact-finding hearing was prematurely commenced, because the child was not "in the care of an authorized agency" until he entered foster care in October 2008, less than 12 months earlier (Social Services Law § 384-b [7] [a]; *but see Matter of Dale P.*, 84 NY2d 72, 77-81 [1994]; *Matter of Hannah D.*, 292 AD2d 867, 867 [2002]; *Matter of Patricia HH. v Laura II.*, 200 AD2d 115, 117-118 [1994]; *see also Matter of Paul Z. [Karen AA.—Paul N.]*, 68 AD3d 1473, 1474-1476 [2009], *lv dismissed* 14 NY3d 749 [2010]). Notably, this claim was not raised until more than a month after the fact-finding hearing had commenced and, when Family Court advised that it would reserve decision, respondent did not object to continuing the hearing in the interim. Moreover, before the court made a determination on the merits, the parties resolved the matter by stipulating that the second amended petition would be filed and that the testimony already taken would be incorporated into the subsequent proceedings.[1] Contrary to respondent's claims on appeal, the record reveals that the terms of this stipulation were fully set forth on the record, respondent's consent—given by her counsel in her presence—was unequivocal, and no objections were raised on this ground thereafter. Therefore, respondent's related claims are not subject to appellate review (*compare Matter of McDonald v Reed*, 68 AD3d 1181, 1181-1182 [2009], *lv dismissed* 14 NY3d 758 [2010]; *Matter of Verry v Verry*, 63 AD3d 1228, 1230 [2009], *lv denied* 13 NY3d 707 [2009]).

We reject respondent's contention that petitioner failed to prove that it made diligent efforts to encourage and strengthen her relationship with the child (*see* Family Ct Act § 614 [1] [c], [d]; § 622; Social Services Law § 384-b [4] [d]; [7] [a]; *Matter of Nazelle RR. [Lisa RR.]*, 85 AD3d 1253, 1253-1254 [2011], *lv denied* 17 NY3d 710 [2011]). The testimony revealed that petitioner offered respondent a variety of services designed to improve the conditions that led to the child's removal, such as parenting classes, domestic violence counseling, and mental health counseling. Petitioner kept respondent informed of the child's progress, repeatedly reminded her of the importance of keeping her home clean and sanitary and of maintaining regular contact with the child, repeatedly modified the visitation schedule to accommodate respondent, and provided practical assistance including gas vouchers and bus passes. Accordingly,

---

**1.** The record reveals that the parties based this stipulation on their agreement that the child had been in the care of an authorized agency for at least 12 months when the second amended petition was filed, although continuing to dispute precisely when the period began to run.

clear and convincing evidence supports Family Court's conclusion that the requisite efforts were made (*see* Social Services Law § 384-b [7] [f]; *Matter of Tyler LL. [Deborah KK.]*, 84 AD3d 1465, 1466 [2011]; *Matter of Laelani B.*, 59 AD3d 880, 881 [2009]).

Petitioner further established that respondent did not maintain contact with the child or plan substantially for his future (*see* Social Services Law § 384-b [3] [g] [i]; [7] [a]; *Matter of Tyler LL. [Deborah KK.]*, 84 AD3d at 1466). To her credit, respondent participated in some of the services offered to her and terminated a violent relationship with the child's father. Nonetheless, she failed to complete most of the programs and did not regularly attend her mental health counseling.[2] She moved frequently, and caseworkers testified that their visits to her various residences routinely revealed dirty, unsafe conditions, such as debris, dog feces and urine on the floors. Most significantly, respondent's visits with the child were sporadic and inconsistent. Despite the generous visitation schedule offered by the foster parents and petitioner's practical assistance, she routinely failed to appear for scheduled visits, sometimes for weeks at a time and often after having promised the child or the foster parents that she would appear. We defer to Family Court's determination that her excuses for many of these absences were incredible (*see Matter of Kaiden AA. [John BB.]*, 81 AD3d 1209, 1211 [2011]). Moreover, the testimony revealed that when visits did occur, respondent's interactions with the child were often inappropriate, and the child experienced nightmares and other stress-related symptoms that worsened when visits occurred and improved when they did not. The record offers no support for respondent's claim that her relationship with the child was undermined by the foster parents. Accordingly, clear and convincing evidence supports Family Court's conclusion that respondent permanently neglected the child (*see* Social Services Law § 384-b [7] [c]; *Matter of Ja'Heem W. [Beronica W.]*, 80 AD3d 917, 918 [2011]; *Matter of Vashaun P.*, 53 AD3d 712, 715-716 [2008]).

Respondent's next contention—that Family Court erred in limiting the duration of the suspended judgment to four months—is not subject to appellate review as the judgment was entered on consent (*see Matter of Amber VV.*, 22 AD3d 967, 968 [2005], *lv denied* 6 NY3d 708 [2006]; *Matter of Bryan W.*, 299 AD2d 929, 930 [2002], *lv denied* 99 NY2d 506 [2003]). In any event, respondent failed to take advantage of this " 'brief grace period within which to become a fit parent with whom the child

---

**2.** Respondent was diagnosed with bipolar and depressive disorders.

[could] be safely reunited' " (*Matter of Clifton ZZ. [Latrice ZZ.]*, 75 AD3d 683, 683 [2010], quoting *Matter of Elias QQ. [Stephanie QQ.]*, 72 AD3d 1165, 1166 [2010]), as her record of inconsistent visitation did not improve. When she complained that she was uncomfortable with the foster parents, petitioner moved the visits from their home to a supervised visitation site; respondent's participation in this program was subsequently terminated due to missed visits. Thereafter, she neither sought to reenroll in the program nor resumed visiting at the foster parents' home. When, at respondent's request, a telephone schedule was established by which the foster parents called her every morning at a prescribed time, she rarely answered the phone. The caseworker testified that respondent's home continued to be dirty, cluttered, and unsafe for a child. Accordingly, were this issue properly before us, we would find that petitioner demonstrated by a preponderance of the evidence that respondent failed to address the causes of the child's removal and that revocation of the suspended judgment was appropriate (*see Matter of Ronnie P. [Danielle Q.]*, 85 AD3d 1246, 1247 [2011]; *Matter of Clifton ZZ. [Latrice ZZ.]*, 75 AD3d at 684-685).

Finally, Family Court properly determined that termination of respondent's parental rights was in the child's best interests. Respondent's noncompliance with the terms of the suspended judgment did not require this conclusion but was nonetheless "strong evidence that termination [was], in fact, in the [child's] best interests" (*Matter of Clifton ZZ. [Latrice ZZ.]*, 75 AD3d at 685). The four-year-old child had been out of respondent's care for most of his life. The evidence established that contact with respondent caused him significant distress and that his foster parents were willing to adopt him. Family Court's determination was supported by a sound and substantial basis in the record (*see Matter of Elias QQ. [Stephanie QQ.]*, 72 AD3d at 1167; *Matter of Dessa F.*, 35 AD3d 1096, 1097-1098 [2006]).

Peters, J.P., Lahtinen, Stein and McCarthy, JJ., concur. Ordered that the orders are affirmed, without costs.