■ In the Matter of CHORUS SS. and Others, Children Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ELATISHA SS., Appellant. [941 NYS2d 745]—

Egan Jr., J. Appeal from an order of the Family Court of Tompkins County (Rowley, J.), entered April 15, 2011, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be permanently neglected, and terminated respondent's parental rights.

Respondent is the biological mother of seven children, four of whom—Chorus SS. (born in 2004), Saul SS. (born in 2005) and twin girls, Leonorah SS. and Giordan SS. (born in 2008)—are the subject of this proceeding. Chorus and Saul initially were placed in petitioner's custody in March 2006, at which time respondent entered Tompkins County Family Treatment Court and was provided with services to address her substance abuse, mental health and financial issues, as well as her history of choosing dangerous relationship partners. The children were returned to respondent's care—under petitioner's continued supervision—in February 2008. Approximately one year later, respondent tested positive for benzodiazepine and, during a follow-up home visit, petitioner discovered that respondent had violated a court order prohibiting a certain individual from having contact with her children. As a result, all four children were

removed from respondent's home in March 2009. Thereafter, in April 2010, petitioner commenced this proceeding pursuant to Social Services Law § 384-b seeking to terminate respondent's parental rights. Following lengthy fact-finding and dispositional hearings, Family Court adjudicated respondent's children to be permanently neglected and terminated respondent's parental rights. This appeal by respondent ensued.

We affirm. "In order to establish permanent neglect, the petitioner is required to prove, by clear and convincing evidence, that it made diligent efforts to strengthen and encourage the parent-child relationship and that, despite those efforts, the respondent failed to maintain contact with the child or plan for the child's future for a period of one year or 15 of the most recent 22 months" (*Matter of Angelina BB. [Miguel BB.]*, 90 AD3d 1196, 1197 [2011] [citations omitted]; *see* Family Ct Act § 614 [1] [c], [d]; Social Services Law § 384-b [4] [d]; [7] [a]; *Matter of Jacelyn TT. [Carlton TT.]*, 91 AD3d 1059, 1060 [2012]). "[C]ontact and planning are alternative elements, and proof of failure to perform one [of these elements] is sufficient to sustain a finding of permanent neglect" (*Matter of Jyashia RR. [John VV.]*, 92 AD3d 982, 984 [2012] [internal quotation marks and citations omitted]). Additionally, while the petitioning agency is required to undertake "affirmative, repeated and meaningful efforts to restore the parent-child relationship" (*Matter of Marquise JJ. [Jamie KK.]*, 91 AD3d 1137, 1139 [2012] [internal quotation marks and citation omitted]; *see Matter of Victorious LL. [Jonathan LL.]*, 81 AD3d 1088, 1090 [2011], *lv denied* 16 NY3d 714 [2011]), it "cannot guarantee that a parent will be successful" (*Matter of Sadie K.*, 249 AD2d 640, 641 [1998]).

Here, petitioner referred respondent to mental health counseling and numerous substance abuse programs, as well as programs designed to improve respondent's financial stability and assist her in making better relationship choices. Additionally, petitioner scheduled and facilitated supervised visitations with respondent's children, made unannounced home visits to monitor respondent's progress and compliance, engaged in periodic drug testing, met with respondent on a regular basis, conducted team meetings in conjunction with Tompkins County Family Treatment Court and respondent's various service providers and endeavored to keep respondent apprised of the children's progress in foster care. Such proof, in our view, is more than sufficient to discharge petitioner's obligation to exercise diligent efforts (*see Matter of Crystal JJ. [Sarah KK.]*, 85 AD3d 1262, 1263 [2011], *lv denied* 17 NY3d 711 [2011]; *Mat-*

ter of Laelani B., 59 AD3d 880, 881 [2009]; *see also Matter of Syles DD. [Felicia DD.]*, 91 AD3d 1054, 1055 [2012]).[1]

We are equally persuaded that petitioner met its burden of demonstrating that respondent failed to plan for her children's future. At the very least, respondent was required to take meaningful steps to address the specific issues that led to the children's removal from her home in the first instance (*see Matter of Eric G.*, 59 AD3d 785, 787 [2009]), and her failure to do so "is interpreted as [a] failure to plan for [her children's] future" (*Matter of Tailer Q. [Melody Q.]*, 86 AD3d 673, 674 [2011] [internal quotation marks and citations omitted]). Although it is undisputed that respondent, among other things, exercised the vast majority of her visitations with her children and successfully completed two inpatient programs for substance abuse, she nonetheless was unable to remain clean and sober during the one-year period preceding the filing of the permanent neglect petition in April 2010 and persisted in making poor relationship choices.[2] In this regard, the record reflects that respondent tested positive for amphetamines in June 2009, twice tested positive for alcohol in September 2009 and tested positive for cocaine in November 2009 and December 2009. Notably, respondent—by her own admission—used her paycheck and a portion of the proceeds from the sale of her vehicle to purchase cocaine, which she used "every day" between November 15, 2009 and December 21, 2009. Thus, despite respondent's progress in other areas, her established history of both relapses and poor relationship choices supports Family Court's finding that respondent failed to plan for her children's future (*see Matter of Crystal JJ. [Sarah KK.]*, 85 AD3d at 1264; *Matter of Sierra C. [Deborah D.]*, 74 AD3d 1445, 1447 [2010]; *Matter of Kaytlin TT.*, 61 AD3d 1085, 1087 [2009], *lv denied* 13 NY3d 709 [2009]; *Matter of Laelani B.*, 59 AD3d at 881-882).

As to disposition, Family Court did not abuse its sound discretion in denying respondent's request for a suspended judgment—particularly in view of the fact that respondent admitted to using crack cocaine three weeks prior to the dispositional

---

1. Although the relationship between respondent and the foster mother was at times problematic, the record as a whole does not support respondent's claim that the foster mother undermined respondent's relationship with her children (*see Matter of Jonathan NN. [Michelle OO.]*, 90 AD3d 1161, 1164 [2011], *lv denied* 18 NY3d 808 [2012]; *Matter of Victorious LL. [Jonathan LL.]*, 81 AD3d at 1090).

2. On this latter point, respondent had a demonstrated history of socializing with ex-convicts—despite being aware of petitioner's concerns as to the potential threat that these individuals posed to, among other things, the children's safety.

hearing—and, based upon our review of the record as a whole, we agree that termination of respondent's parental rights was in the children's best interests (*see Matter of Sierra C. [Deborah D.]*, 74 AD3d at 1447-1448; *Matter of Laelani B.*, 59 AD3d at 882). Finally, inasmuch as respondent's parental rights were terminated in an adversarial proceeding, Family Court would have been without authority to grant any request that respondent may have made for posttermination visitation with her children (*see Matter of Xionia VV. [Amos VV.]*, 78 AD3d 1452, 1453 [2010]; *Matter of Melissa DD.*, 45 AD3d 1219, 1221-1222 [2007], *lv denied* 10 NY3d 701 [2008]). Respondent's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Mercure, A.P.J., Rose, Malone Jr. and Garry, JJ., concur. Ordered that the order is affirmed, without costs.