In the Matter of JAMES WW., a Child Alleged to be Permanently Neglected. RENSSELAER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TARA XX., Appellant. (And Another Related Proceeding.) [955 NYS2d 424]—

Kavanagh, J. Appeals from two orders of the Family Court of Rensselaer County (Cholakis, J.), entered April 15, 2011, which, among other things, granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate James WW. a permanently neglected child, and terminated respondent's parental rights.

A neglect petition was filed against respondent after her son (born in 2009) tested positive at birth for drugs. While the petition was pending, the child was placed in the custody of his paternal grandmother. A few months later, petitioner's caseworker visited the grandmother's home and discovered that the child apparently did not reside there, but was in fact being cared for by an individual who had previously been the subject of an indicated report of neglect.[1] As a result, custody of the child was transferred to petitioner, which subsequently placed him in a foster home with his current foster parents. Ultimately, Family Court conducted a hearing on the neglect petition and determined that respondent had neglected the child.[2] A permanency hearing was held and the court directed that the child remain in petitioner's custody and in the care of his foster parents.[3]

In August 2010, petitioner filed a petition alleging that re-

---

1. Petitioner's caseworker also reported that an odor of marihuana permeated the grandmother's apartment.

2. The hearing was conducted in respondent's absence due to her repeated failures to appear as scheduled.

3. A petition was later filed alleging that respondent had violated the terms of this dispositional order by failing to participate in substance abuse treatment programs and abstain from using illegal drugs. Also, multiple warrants were issued for respondent's arrest due to her repeated failure to appear as directed by Family Court. '

spondent had permanently neglected the child and sought termination of her parental rights.[4] At the fact-finding hearing in October 2010, after the first witness was called, respondent, in the presence of counsel, executed a judicial surrender of her parental rights.[5] Shortly thereafter, respondent moved to withdraw this surrender of her parental rights, claiming that she was under the influence of drugs when she made that decision and, for the first time, argued that the child should be placed with foster parents who practiced the Jewish religion. Family Court granted respondent's motion to vacate the judicial surrender of her parental rights and conducted a hearing on the permanent neglect petition.[6]

At the fact-finding hearing, petitioner's caseworkers testified to their unsuccessful efforts to get respondent to participate in substance abuse programs designed to treat her addiction. They described the numerous attempts made, all unsuccessful, to facilitate visitation between respondent and the child. Based on this testimony and other evidence introduced at the hearing, Family Court found that, among other things, she had permanently neglected the child. At the dispositional hearing, petitioner asserted that the child's best interests could only be served if he was placed with his foster parents and freed for adoption. In opposition, respondent's counsel asserted that because respondent was Jewish, the child should be placed with a Jewish family who would raise him in the Jewish faith. Family Court ultimately concluded that it was in the child's best interests that respondent's parental rights be terminated, and that he be freed for adoption by his foster parents. Respondent appeals from that order.[7]

We affirm. Regarding Family Court's finding that respondent permanently neglected the child, petitioner established by clear and convincing evidence that diligent efforts were made to strengthen and promote the parental relationship between respondent and the child (*see* Social Services Law § 384-b [7] [a];

---

4. Later, a neglect petition was filed against respondent after her daughter (born in 2010) also tested positive at birth for illegal drugs. This child was placed with foster parents who specialized in providing care for children born addicted to illegal drugs.

5. Family Court also terminated the parental rights of the child's father.

6. Family Court first held a hearing on the neglect petition filed as to respondent's daughter.

7. The grandmother also filed a petition seeking custody of the child, which Family Court dismissed. While respondent also appealed from the order dismissing that petition, she has not addressed that issue in her brief and, as such, that appeal has been abandoned (*see Matter of Loraida R. [Lori S.]*, 97 AD3d 925, 926 n 2 [2012]; *Matter of Eck v Eck*, 57 AD3d 1243, 1244 n [2008]).

Family Ct Act § 614 [1]). Petitioner's caseworkers testified in detail as to their efforts to reunite respondent with the child and how they established a visitation schedule designed to facilitate her access to the child while the permanent neglect proceeding was pending. Throughout this period, petitioner failed to adhere to this schedule and continued to refuse to participate in substance abuse counseling (*see Matter of Havyn PP. [Morianna RR.]*, 94 AD3d 1359, 1361 [2012]). Also, the caseworkers testified to respondent's failure to comply with Family Court's dispositional orders, even though she was routinely informed of her obligations under them. Simply stated, petitioner established by clear and convincing evidence that it made a genuine effort to reunite respondent with the child and that effort was unsuccessful because of respondent's refusal to cooperate with the agency and comply with the dispositional orders issued by Family Court (*see Matter of Neal TT. [Deborah UU.]*, 97 AD3d 869, 870 [2012]; *Matter of Havyn PP. [Morianna RR.]*, 94 AD3d at 1361).

Moreover, the record supports Family Court's determination that respondent failed to plan for the child's future and did not "take meaningful steps toward alleviating the conditions that led to [his] removal" (*Matter of Neal TT. [Deborah UU.]*, 97 AD3d at 871 [internal quotation marks and citation omitted]; *see* Social Services Law § 384-b [7] [a], [c]; *Matter of Havyn P. [Morianna RR.]*, 94 AD3d at 1361; *Matter of Chorus SS. [Elatisha SS.]*, 93 AD3d 1097, 1099 [2012], *lv denied* 19 NY3d 807 [2012]; *Matter of Destiny CC.*, 40 AD3d 1167, 1169 [2007]). In that regard, we again note that since the child was placed at birth with the grandmother, and during the entire period he was in foster care, respondent did not make a meaningful effort to address her addiction to illegal drugs. Her attendance at Family Court for this proceeding was, at best, sporadic and, when she did attend, often she could not participate because she appeared to be under the influence of drugs. As for respondent's argument that she planned for the child's future by advocating placement with the grandmother, the reality is that the grandmother was not able to properly care for the child and, by any measure, was an unsuitable resource for his placement.

Respondent also argues that Family Court's decision to free the child for adoption by his foster parents ignores New York's constitutional and statutory requirements that children be placed with foster parents who share the same religious beliefs. We disagree. Family Ct Act § 116 and Social Services Law § 373 "are to be applied so as to give effect to the religious wishes of

the natural mother so far as consistent with the best interests of the child, and where practicable. The religious preferences of the natural parent are thus subordinated to the best interests of the child which are paramount" (*Matter of Michael D.*, 37 AD2d 78, 79 [1971] [internal quotation marks and citations omitted]; *see* NY Const, art VI, § 32; *Matter of Dickens v Ernesto*, 30 NY2d 61, 65-66 [1972]). Here, respondent made only a belated request that the child be placed in a Jewish home and did so only after she had already executed a judicial surrender of her parental rights.[8] By that time, the child had been in foster care for almost 18 months and, throughout that period, respondent's only request was that the child be allowed to live with the paternal grandmother, who is not Jewish. Given the age of the child and the fact that he has developed a strong emotional attachment to his foster parents and has thrived in their care, his interests are clearly best served by his being freed for adoption by his foster parents (*compare Matter of Elianne M.*, 184 AD2d 98 [1992], *lv dismissed* 81 NY2d 1067 [1993]).

Finally, we are well aware that adoption by the foster parents will necessarily result in the child being separated from his sister.[9] However, given the circumstances surrounding the sister's placement and her need for specialized medical care, it would not, in our view, be in the child's best interests that he be placed in a foster home where the sister now resides (*see* Family Ct Act § 1027-a; 18 NYCRR 421.18 [d] [3]).

Peters, P.J., Lahtinen, Stein and Egan Jr., JJ., concur. Ordered that the orders are affirmed, without costs.

---

**8.** We note that the record does not show that respondent made a similar request as to her daughter. Also, respondent's parental rights as to two older children have been previously terminated, and no evidence has been offered that she ever requested that either of these children be placed in a Jewish home to be raised in the Jewish faith.

**9.** The first time this issue appears to have been raised is in submissions that respondent made after the dispositional hearing had been conducted.