Garry, J.
*1289 First considering the father’s claims, he contends that Family Court improperly limited inquiry at the fact-finding hearing into petitioner’s alleged failure to provide the children with appropriate services and foster care. We find upon review that the court did permit extensive testimony regarding the children’s health, special needs, education and counseling, including testimony about problems in the foster home. To the extent that the court limited this testimony, these issues were not pertinent to the determination required at fact-finding (see Family Ct Act § 622) — although, as further discussed below, they were relevant to the dispositional phase of the proceedings. Notably, there was no showing that either petitioner or the foster family sought to undermine the father’s relationship with the children, or that the alleged problems interfered with his ability to maintain contact with the children or plan for their future (see Social Services Law § 384-b [7] [a]; compare Matter of Leon *1290 RR, 48 NY2d 117, 124-125 [1979]; Matter of Chorus SS. [Elatisha SS.], 93 AD3d 1097, 1099 n 1 [2012], lv denied 19 NY3d 807 [2012]; Matter of Victorious LL. [Jonathan LL.], 81 AD3d 1088, 1090 [2011], lv denied 16 NY3d 714 [2011]).
The father next contends that petitioner failed to make sufficiently diligent efforts to encourage him to obtain a sex offender evaluation. Petitioner’s caseworker testified that upon learning that the father had a history of sexual encounters with underaged girls and a related criminal conviction, she repeatedly asked him to undergo a sex offender evaluation, but he vehemently refused to do so. The record contradicts the father’s claim that petitioner did not sufficiently explain its reasons for asking him to undergo this evaluation. His contention that petitioner should have pressed him more insistently to do so is without merit in view of his “utterly [uncooperative]” response (Matter of Sheila G., 61 NY2d 368, 385 [1984]; accord Matter of Destiny CG, 40 AD3d 1167, 1169 [2007]).
We find clear and convincing evidence in the record that the father failed to plan for the return of the children in that, among other things, he failed to obtain the sex offender evaluation, did not successfully complete alcohol treatment or acknowledge his alcoholism, had unresolved anger management issues, and took a generally resistant and uncooperative attitude that interfered with his ability to comply with the service plan. While the father argues that he never failed regular screening tests for alcohol and drug use, there was also considerable testimony from which it could reasonably be inferred that he continued to drink, and his failure to testify permitted Family Court to draw the strongest inferences against him supported by the record (see Matter of Nassau County Dept. of Social Servs. v Denise J., 87 NY2d 73, 79 [1995]; Matter of Jacob WW, 56 AD3d 995, 997-998 [2008] ). Thus, according deference to the court’s credibility assessments and factual determinations (see Matter of Jyashia RR. [John VV.], 92 AD3d 982, 984 [2012]), we find no reason to disturb the determination that the father permanently neglected the children (compare Matter of Alaina E., 59 AD3d 882, 886 [2009] , lv denied 12 NY3d 710 [2009]; Matter of Chianti FF., 205 AD2d 849, 850-851 [1994]).
Turning next to the mother’s claims, petitioner was required to show, as pertinent here, that she permanently neglected the children by failing to plan for their future despite petitioner’s diligent efforts to facilitate and strengthen her relationship with them (see Social Services Law § 384-b [7] [a]; Matter of Neal TT. [Deborah UU.], 97 AD3d 869, 869-870 [2012]). We reject her contention that petitioner made insufficiently diligent *1291 efforts to assist the paramour in obtaining a sex offender evaluation, as petitioner’s statutory duty to encourage the parental relationship did not constitute a duty to the paramour. Notably, the efforts made to arrange this evaluation did not succeed due to circumstances beyond petitioner’s control, including the paramour’s residence in another county and his failure to supply requested information.
Next, the mother contends that Family Court improperly relied upon hearsay evidence in determining that the paramour was an untreated sex offender. Petitioner’s caseworker testified that the paramour had admitted to him that he had a history of sexual offenses, including a criminal conviction resulting from sexual abuse of his daughter. The caseworker further stated that he investigated a hotline report that the paramour had sexually abused his son and, after interviewing the son, indicated the report.[2] The paramour did not testify, and no other evidence of his sexual or criminal history was introduced. In acting as the trier of fact, the court “is presumed to be able to distinguish between admissible evidence and inadmissible evidence and to render a determination based upon the former” (Matter of Backus v Clupper, 79 AD3d 1179, 1181 [2010], lv denied 16 NY3d 704 [2011]). Family Court properly admitted the caseworker’s testimony regarding the paramour’s admissions not for its truth, but for the limited purpose of establishing a good-faith basis for petitioner’s insistence that the mother establish a separate residence (see Matter of Marino S., 100 NY2d 361, 372 [2003], cert denied 540 US 1059 [2003]; Matter of Christopher II., 222 AD2d 900, 902 [1995], lv denied 87 NY2d 812 [1996]). We find that, to the extent that the court appeared to conclude in its decision that the paramour was a sex offender, the court did so in the context of concluding that the mother knew the serious nature of the accusations against him, such that her rejection of these claims was unreasonable. Other evidence in the record also supported this conclusion; although the mother never conceded that the paramour was a sex offender, she did acknowledge that petitioner had repeatedly advised her that this was so and that she knew that residing with him was the most significant barrier to the return of her children. Further, as with the father, the mother’s failure to testify at the fact-finding hearing permitted the court to draw the strongest possible inferences against her (see Matter of Jacob WW., 56 *1292 AD3d at 997-998). In view of these circumstances, together with the separate evidence that the mother never progressed beyond supervised visitation with the children or became capable of safely managing them without assistance, we find clear and convincing evidence in the record that she did not develop the requisite “realistic and feasible” plan for the future of her children (Social Services Law § 384-b [7] [c]; see Matter of Lisa Z., 278 AD2d 674, 677-678 [2000]).
Finally, the mother contends that during the dispositional hearing, Family Court improperly limited the previously discussed evidence regarding alleged deficits of the foster parents and, further, that it should have granted her a suspended judgment rather than terminating her parental rights. We agree with the first contention, but find the error to be harmless in view of other evidence “including [the mother’s] own testimony [that] . . . provides extensive support for the court’s disposition” (Matter of Kyle K. [Harry K.], 72 AD3d 1592, 1593 [2010], lv denied 15 NY3d 705 [2010] [internal quotation marks and citation omitted]). Following a dispositional hearing, the court is statutorily required to enter an order that dismisses the petition, suspends judgment or commits the child’s guardianship and custody to the agency, and must make its decision “solely on the basis of the best interests of the child” (Family Ct Act § 631; see Matter of Star Leslie W, 63 NY2d 136, 147 [1984]). As to whether a suspended judgment was appropriate here, testimony at the dispositional hearing established that the mother had shown no improvement in her ability to manage the children or care for them safely on her own and that she continued to reside with the paramour, rejecting petitioner’s concerns about his sexual history as “a lie.” The mother testified on her own behalf, stating that she planned to move out of the paramour’s residence “soon.” However, she acknowledged that she had only recently formulated the plan to move, that the proposed new residence was not yet habitable, and that she had not informed her proposed housemate — whose last name she did not know — of the children’s special needs. The testimony thus established that the mother’s plan to move was unrealistic at best, that she had made no measurable progress in addressing the issues that prevented her from caring for the children in the first instance, and that further extending the children’s stay in foster care by suspending judgment would not have been in their best interests (see Matter of Kayla KK. [Tracy LL.], 68 AD3d 1207, 1209 [2009], lv denied 14 NY3d 707 [2010]).
The children’s foster parents hoped to adopt them if they were freed; thus, consideration of the stability and appropriate *1293 ness of the foster home was of unquestioned significance in analyzing their best interests (see Matter of Kyle K [Harry K.], 72 AD3d at 1593), particularly given the evidence adduced during the fact-finding hearing regarding problems experienced by the children in the foster home. Family Court did not exclude evidence pertaining to these issues. On the contrary, petitioner’s caseworker testified at length about both children’s physical and psychological health, their educational status, the nature of the foster parents’ home and their “affectionate” and “appropriate” relationship with the children. The caseworker also fully addressed the problems that had been previously identified, testifying that there had been substantial improvement relative to the son’s health and his educational and behavioral issues. In cross-examining this caseworker, the father’s counsel sought to explore more recent alleged failings on the foster parents’ part, and Family Court allowed some limited inquiry before precluding further questioning on this subject. While broader cross-examination on this issue might have been appropriate given its significance, there was no objection when the court terminated further questioning, nor any suggestion that the alleged failings were anything more than inconsequential. In any event, the ultimate purpose of the dispositional inquiry was not to determine whether the children were in the best possible foster placement — a determination statutorily entrusted to petitioner — but to decide whether their best interests required termination of the mother’s parental rights. Given the evidence that the children’s progress in the foster home was satisfactory, and the lack of any evidence that the mother was capable of offering them a safe home, the court’s determination to commit the children’s guardianship and custody to petitioner was in their best interests (see Matter of Kyle K, [Harry K.], 72 AD3d at 1593; compare Matter of Krystal B. [Thomas P.J., 77 AD3d 1110, 1111 [2010]).
Mercure, J.P., Spain, Stein and McCarthy, JJ., concur. Ordered that the orders entered November 2, 2011 and November 3, 2011 are affirmed, without costs. Ordered that the appeal from the order entered October 18, 2011 is dismissed, without costs.

. Notably, the caseworker’s testimony describing his actions relative to the hotline report was not hearsay, and thus not subject to the limitations that Family Court placed on the testimony regarding the paramour’s admissions.