# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**545**
**CAF 14-01596**
PRESENT: SCUDDER, P.J., SMITH, SCONIERS, WHALEN, AND DEJOSEPH, JJ.

IN THE MATTER OF CARSON W.
------------------------------------------
OSWEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,      MEMORANDUM AND ORDER
PETITIONER-APPELLANT;

JAMIE G. AND RYAN W., RESPONDENTS-RESPONDENTS.

NELSON LAW FIRM, MEXICO (LESLEY GERMANOW SCHMIDT OF COUNSEL), FOR
PETITIONER-APPELLANT.

LINDA M. CAMPBELL, SYRACUSE, FOR RESPONDENT-RESPONDENT JAMIE G.

AMDURSKY, PELKY, FENNELL & WALLEN, P.C., OSWEGO (COURTNEY S. RADICK OF
COUNSEL), FOR RESPONDENT-RESPONDENT RYAN W.

---

Appeal from an order of the Family Court, Oswego County (Kimberly
M. Seager, J.), entered August 27, 2014 in a proceeding pursuant to
Family Court Act article 10.  The order returned the subject child to
the custody of respondents.

It is hereby ORDERED that the order so appealed from is
unanimously reversed on the law without costs and the matter is
remitted to Family Court, Oswego County, for further proceedings in
accordance with the following memorandum:  Petitioner appeals from an
order pursuant to Family Court Act § 1089, following a permanency
hearing, which returned the subject child, Carson W., to the care and
custody of respondents.  This Court granted petitioner's motion,
supported by the Attorney for the Child (AFC), staying the order
pending appeal.  We conclude that Family Court's determination that
"there is no evidence that Carson will face the possibility of future
neglect or abuse while in [respondents'] care" is not supported by a
sound and substantial basis in the record (*see generally Matter of
Hayley PP. [Christal PP.—Cindy QQ.]*, 77 AD3d 1133, 1134, *lv denied* 15
NY3d 716).  Instead, we conclude that, although respondents have
completed certain counseling and parenting services, the record
establishes that no progress has been made to " 'overcome the specific
problems which led to the removal of the child' " (*Matter of Kasja YY.
[Karin B.]*, 69 AD3d 1258, 1259, *lv denied* 14 NY3d 711).

Petitioner commenced this Family Court Act article 10 proceeding
on November 26, 2013, alleging that two-month-old Carson and 14-month-
old Makynzie G. were severely abused children.  The amended petition
alleged that, while in the care of respondent father, Makynzie
suffered a hypoxic brain injury, which was fatal.  With respect to

Carson, the amended petition alleged that a full skeletal bone scan revealed that he had a spiral fracture of the upper left arm. Following testimony of witnesses at a fact-finding hearing, which is not included in this record as per the order settling the record on appeal, respondents each admitted that Makynzie "suffered from a non-accidental death" and that Carson sustained a broken arm in their care, for which they have "no reasonable explanation."  At the time of their admissions on June 2, 2014, the preliminary autopsy report indicated that Makynzie's death was the result of hypoxic-ischemic encephalopathy after cardiac arrest, but the cause of the cardiac arrest and the manner of death were "undetermined."  Based upon respondents' admissions, the children were determined to be abused children and Carson was ultimately placed in the home of his paternal grandmother, who supervised extensive daily visitation between respondents and Carson.  Pursuant to the dispositional order entered July 2, 2014, respondents were required to participate in parent educator services, individual counseling, and a psychosocial assessment.  It is undisputed that, at the time of the permanency hearing on July 23, 2014, respondents had completed the ordered services.  Petitioner's report indicated that the permanency goal was "reunite with parents" and that discharge from placement within the next six months was not anticipated.  The report indicated that, in order for respondents to be reunited with Carson, they must be able "to verbalize responsibility in Carson's injury."  We note that, at the initial appearance for the permanency hearing, the court encouraged petitioner to begin unsupervised visits, including overnight visits, between the then-10-month-old child and respondents, but petitioner refused to do so before a hearing was conducted.

At the hearing, the children's treating pediatrician testified that he examined Carson after Makynzie's death and that, although the physical examination was normal, X rays revealed a "non-accidental, a traumatic [spiral] fracture of his left humerus," i.e., his upper arm. The pediatrician referred Carson to a pediatric orthopedist who determined that the spiral fracture occurred 2 to 3 weeks before the X ray was taken, when Carson was approximately 1½ months old.  The pediatrician denied that the fracture could have occurred during the birth process, which is the explanation for the fracture that respondents provided as part of the psychosocial assessment.  The court refused to permit the pediatrician to testify, as not relevant, to the contents of the amended autopsy report, which determined that the cause of Makynzie's death was "hypoxic ischemic encephalopathy due to smothering."  The court stated, "We have admissions by both parents that the child died" and that Carson sustained "an unexplained injury. . . . [W]e're here to plan for Carson's future.  Not retry the case." The court, however, permitted the caseworker to testify that the amended autopsy report changed the cause of death from "undetermined" to "homicide," which the amended autopsy report states is "defined in medical terms as death at the hands of another," due to smothering.

We agree with petitioner that the court erred in refusing to admit in evidence the amended autopsy report and the records of the pediatric orthopedist.  Although those uncertified records constitute hearsay evidence, evidence that is material and relevant is admissible

at a permanency hearing (*see* Family Ct Act § 1046 [c]; *Matter of Laelani B.*, 59 AD3d 880, 882; *cf.* § 1046 [b] [iii]), and we conclude that the evidence is material and relevant.  We note that this Court has reviewed those records inasmuch as they are included in the record on appeal as part of petitioner's motion to stay the order.

The caseworker testified that respondents had failed to take responsibility for the injuries sustained by their children, and thus petitioner sought to continue the placement with the paternal grandmother.  In response to that testimony, the court stated, "They're never going to be able to . . . They've admitted that they have unexplained injuries.  That's the extent that they can admit to."  The court asked respondents if they would "insure that [the] child is safe," and each respondent replied "yes."  The caseworker explained that it was difficult to recommend further services because, although respondents made an admission in court, they each stated to her that "the only reason why they made the admission is because their attorneys told them to do it."  The court asked respondents whether their respective statements at the time of the admission were true and respondents replied that their statements were true.  The caseworker further testified that respondents both denied that they knew what happened to either child and the father stated that he did not know why he made "those statements" to the police regarding Makynzie's death.

The court determined that all services had been completed, no further services were recommended, and there was "no evidence that Carson will face the possibility of future neglect or abuse while in [respondents'] care.  And there is no testimony that [petitioner] could provide any additional services that would mitigate any possibility of same."  The court thus determined that the goal of "return to parent" has been achieved.

We agree with petitioner that, "in accordance with the best interests and safety of the child, including whether the child would be at risk of abuse or neglect if returned to [respondents]," placement should continue with a fit and willing relative pending further order of the court following a permanency hearing (Family Ct Act § 1089 [d]).  "Despite an otherwise good relationship between respondent[s] and [their] child[], [their] inability to acknowledge [his and/or her] previous behavior supports the conclusion that [they have] a faulty understanding of the duties of parenthood sufficient to infer an ongoing danger to the subject child" (*Matter of Keith H.*, 113 AD3d 555, 556, *lv denied* 23 NY3d 902).  The record establishes that, while in respondents' care, 14-month-old Makynzie died as a result of smothering, that two-month-old Carson sustained a non-accidental, traumatic spiral fracture, and that the court lacked sufficient information to determine who caused the death and the fracture (*cf. Matter of Kadiatou*, 52 AD3d 388, 390, *lv denied* 12 NY3d 701).  Although respondents complied with court-ordered services, "[w]ithout explaining the circumstances which led to [Makynzie's death and Carson's fracture, respondents] cannot effectively address the underlying parenting problems" (*Matter of Haylee RR.*, 47 AD3d 1093, 1095).  We conclude that respondents' willingness to "vaguely . . .

accept[] responsibility" for Makynzie's death and Carson's injury is not sufficient to support a determination that Carson's best interests are served by returning him to the care and custody of respondents (*id.*).  We therefore reverse the order and remit the matter to Family Court for further permanency proceedings before a different judge.

Entered:  May 8, 2015                    Frances E. Cafarell
                                         Clerk of the Court